**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 13, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES of AMERICA,

      Plaintiff - Appellee,

v.

MICHAEL SENNER,

      Defendant - Appellant.

No. 05-3122
(D.C. No. 03-CR-20054-KHV)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, **EBEL**, and **MURPHY**, Circuit Judges.

In this direct criminal appeal, Defendant-Appellant Michael Senner asserts that, during his trial, the Government improperly vouched for the credibility of one of its witnesses. Because Senner did not object at trial, however, we review for plain error. Having jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we AFFIRM.

---

[*]This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.  BACKGROUND

A jury convicted Senner of conspiring to distribute 1,000 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii) and 846.[1]  Senner contends that the jury's specific finding that this conspiracy involved exactly 1,000 kilograms of marijuana was based solely on the testimony of State Trooper Richard Ferrari.  Ferrari had interviewed Senner at his home, immediately after officers arrested Senner and while other officers were executing a search warrant for Senner's house.  Ferrari testified at trial that during this interview, Senner admitted that he "had distributed approximately 3,000 pounds of marijuana within the last year and a half."[2]  On cross-examination, defense counsel challenged

---

[1]21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  And 21 U.S.C. § 841(a)(1) makes it a crime to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  For an offense involving "1000 kilograms or more of a mixture or substance containing a detectable amount of marijuana[,] . . . such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . ."  Id. § 841(b)(1)(A)(vii).

The Government also charged Senner with unlawfully using a firearm in relation to the charged drug conspiracy, in violation of 18 U.S.C. § 924(c), but the jury acquitted Senner of that charge.

[2]Although the jury found that Senner had conspired to distribute 1,000 kilograms, most of the trial testimony discussed amounts of marijuana in pounds.  One kilogram is roughly equivalent to 2.2 pounds.  Thus, the jury found that Senner had conspired to distribute 1,000 kilograms, or approximately 2,200 pounds, of marijuana.

2

Ferrari's credibility by eliciting his testimony that, although Ferrari had a tape recorder available in his vehicle at the time he interviewed Senner, Ferrari did not record his interview with Senner.[3]

In response, the Government on redirect examination verified that Ferrari had not recorded his interview with Senner, and then this exchange occurred:

Q. And in this case, when you were talking to Mr. Senner and he was providing you with this information about his drug activity, were there other agents present?

A. Yes.

Q. You were in Mr. Senner's residence?

A. (Nods head up and down.)

Q. Is that right?

A. Yes.

Q. How many other agents would you say were present when Mr. Senner provided this information about his drug activity?

A. The[re] were numerous officers–of course, an investigation at this level, there are numerous officers that are obviously assigned to different areas, collection of evidence, photographs, interviews, stuff like that. But present during the interview, I know was Special Agent Carrington of the DEA and Task Force Officer Nathan Spray was present during my interview with

_____

[3]Ferrari had, in fact, recorded telephone calls Senner made on this same day. Those calls, however, were made when 1) Senner's courier, Osowski, who was cooperating with police, set up a meeting with Senner, which led to Senner's arrest; and 2) Senner, later cooperating with police, arranged a controlled drug buy with his regular marijuana suppliers. Thus, the record does not suggest that Ferrari selectively decided not to record his interview with Senner.

3

Mr. Senner. And as well as there's a female lady that's going to interpret some tapes for you, she was present during part of the questioning and phone calls [during which Senner, cooperating with police, arranged a controlled drug buy for agents with Senner's marijuana suppliers] as well as Task Force Officer Garrett was present during part.

Q.   And so the information that Mr. Senner provided to you, it's certainly not just your word that he told you these things, is that right?

A.   Right --

Q.   There were other people present when these things were said to you?

A.   Yes, ma'am.

Q.   And have you embellished or have you lied or have you misstated anything that Mr. Senner told you during that interview?

A.   Absolutely not.

The Government called as a trial witness only one of the four officers that Trooper Ferrari mentioned as being present during his interview with Senner. That one officer was Drug Enforcement Agency Task Force Officer Norma Lorenzo, who was the "lady that's going to interpret some tapes for you" to whom Trooper Ferrari had referred. Even so, the prosecutor did not ask Lorenzo if she had overheard Ferrari's interview with Senner.

The jury convicted Senner of conspiring to distribute exactly 1,000 kilograms of marijuana. That amount of marijuana subjected Senner to a statutory mandatory minimum ten-year sentence. See 21 U.S.C.

4

§ 841(b)(1)(A)(vii). Applying the 2004 sentencing guidelines, however, the presentence report ("PSR") calculated that Senner was subject to an even lengthier guideline range of between 151 and 188 months.[4] Nevertheless, the district court, treating the guidelines as advisory, sentenced Senner instead to the lower mandatory minimum ten-year sentence. Later, the district court granted the Government's Fed. R. Crim. P. 35 motion to reduce Senner's sentence further, in light of testimony he had subsequently given in a co-defendant's trial,[5] and resentenced him to sixty-six months. On appeal, Senner challenges both his conviction and sentence, arguing they were products of the Government's improper vouching for Trooper Ferrari's credibility.

## II.   STANDARD OF REVIEW

Senner concedes that he did not object to the challenged portion of the prosecutor's redirect examination of Trooper Ferrari. This court's review, therefore, is for plain error. See Fed. R. Crim. P. 52(b) ("A plain error that

---

[4]The PSR calculated the applicable guideline range based upon Senner's same admission that he had distributed 3,000 kilograms during the eighteen months preceding his arrest. The PSR further noted that the jury had found, instead, that Senner had distributed exactly 1,000 kilograms, but using this lower amount would still not change the guideline range because the offense level was the same for amounts of marijuana between 1,000 and including 3,000 kilograms.

[5]Rule 35(b)(1) provides that "[u]pon the government's motion made within one year of sentencing, the court may reduce a sentence if: (A) the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person; and (B) reducing the sentence accords with the Sentencing Commission's guidelines and policy statements."

affects substantial rights may be considered even though it was not brought to the court's attention."); see also United States v. Young, 470 U.S. 1, 6, 20 (1985) (reviewing prosecutor's improper argument for plain error). Under a plain-error analysis,

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

United States v. Cotton, 535 U.S. 625, 631 (2002) (quotations, citations, alterations omitted).

## III.  ANALYSIS

"It is error for the prosecution to personally vouch for the credibility of a witness." United States v. Harlow, 444 F.3d 1255, 1262 (10th Cir. 2006). "Argument or evidence [amounts to] impermissible vouching if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." Id. (quotation, alteration omitted). It is the latter error that Senner asserts occurred during his trial; that is, Senner asserts that the prosecutor implicitly suggested to the jury that she knew of evidence (the testimony of the four officers present during Ferrari's interview with Senner), not

presented at trial, that corroborated Trooper Ferrari's testimony that Senner admitted he had previously distributed 3,000 pounds of marijuana.

We will assume, for purposes of this appeal, that Senner is able to satisfy the first two plain-error inquiries – that the prosecutor committed error and that the error was plain. We turn, then, to the plain-error test's third prong and consider whether this plain error affected Senner's substantial rights. Senner "bears the burden of establishing the error impacted substantial rights by demonstrating the outcome of the trial would have been different but for the error." Id. at 1261. In this case, therefore, Senner must show that there is "a reasonable probability that, but for the error," the jury would have found that he distributed less than 1,000 kilograms of marijuana. United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004). "[W]hen reviewing [a prosecutor's] vouching for plain error, we weigh the seriousness of the vouching in light of the context of the entire proceeding, including the strength of any curative instructions and the closeness of the case;" that is, "we consider: the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case as a whole." Harlow, 444 F.3d at 1261, 1264 (quotation omitted).

While Trooper Ferrari's testimony that Senner admitted distributing 3,000 pounds of marijuana might have been the only evidence presented at trial that directly supported the jury's finding that Senner conspired to distribute 1,000 kilograms of marijuana, there was a significant amount of other evidence that

7

indicated that Senner had been dealing in large quantities of marijuana. For example, the transaction that led to Senner's arrest involved his paying John Osowski to deliver twenty-five pounds of marijuana to a woman in St. Charles, Missouri, returning with over $10,000 for Senner. Further, Senner admitted that he had been selling twenty to thirty pounds of marijuana to this same woman each week for eight weeks. Senner also admitted that he had other customers besides this woman, though he declined to name any of them.

And when police searched Senner's home and business, they found not only a few pounds of marijuana, but also almost $100,000 in cash for which there was no apparent legitimate source.

Additionally, at the time of his arrest, Senner offered to cooperate with police by arranging a controlled buy with his marijuana suppliers. In doing so, Senner was able to arrange, within just a few hours, a 150-pound marijuana purchase for over $80,000. Trooper Ferrari testified that, based upon his experience investigating drug trafficking, for Senner "to be able to place a telephone call and be able to expect to get that much marijuana tells me . . . that Mr. Senner, in fact, has more than likely dealt with that particular person in the past and more specifically, for those quantities of marijuana." In addition to arranging this 150-pound controlled buy, an amount Senner acknowledged he was comfortable placing with his usual suppliers, Senner admitted to buying up to 200 pounds at one time from the same dealers.

This other evidence indicates that Senner was dealing with significant amounts of marijuana over a period of one and one-half years and so provides support for Ferrari's testimony that Senner specifically admitted to distributing 3,000 pounds of marijuana during this same time period. In light of this supporting evidence, there is not a reasonable probability that, but for the prosecutor's improper vouching, the jury would not have found Ferrari's testimony credible.[6]

---

[6]Nor are we persuaded by Senner's argument, based upon the jury's three inquiries to the court during deliberations, that the jury was so closely divided on whether or not to believe Ferrari's testimony that the prosecutor's improper vouching must have tipped the scales in the prosecution's favor. Jurors inquired of the court whether they had to agree on the 1,000 kilograms in order to convict Senner of conspiring to distribute marijuana and whether they could convict Senner of conspiracy even though they agreed on an amount less than 1,000 kilograms. The district court responded "no" to the first inquiry; "yes" to the second. These inquiries, coming within twenty minutes of each other, could have resulted as much from jurors' confusion as to their deliberative task as from jurors' disagreement over the credibility of Ferrari's testimony. Instruction 13 informed jurors that the Government had charged Senner with conspiring to distribute 1,000 kilograms of marijuana; the instructions addressing the elements of that offense, however, did not mention a need to find quantity, except Instruction 21, which told jurors that, in determining the amount of drugs, if any, that Senner conspired to distribute, they should not include the 150 pounds of marijuana Senner had purchased at the Government's request. Furthermore, the prosecutor, during closing argument, had asserted that jurors did not need to determine an amount unless and until they found Senner guilty of conspiring to distribute marijuana; "the charge is conspiracy to distribute marijuana. The amount is a separate issue for you to consider." Similarly, the verdict form required jurors to specify "the exact quantity which the jury unanimously agrees that" Senner conspired to distribute, but only after finding Senner guilty of conspiring to distribute marijuana. The jurors' inquiries, then, may have just been an attempt to clarify their responsibilities. And the jury's third inquiry

(continued...)

9

Moreover, the record does not reveal any reason why the jury might have otherwise deemed Ferrari's testimony to be incredible. The strongest attack to Ferrari's credibility that the defense could muster was to ask why Ferrari did not tape record Ferrari's statement. And the defense did not challenge any other aspect of Ferrari's testimony except his testimony that Senner admitted distributing 3,000 kilograms of marijuana.

As for the court's curative acts, because defense counsel did not object to the prosecutor's redirect examination of Ferrari, the court did not have the opportunity to take immediate curative action. But before trial, the court did instruct jurors that their "decision must be based on evidence which all of you see and hear in the courtroom;" that attorneys' statements are not evidence; and that, "[i]n the end, it will be up to you to decide which witnesses to believe, which witnesses not to believe and how much of any particular witness' testimony you

---

[6](...continued)
simply asked "[h]ow many pounds are a 1000 kilos," which does not suggest any specific dispute among jurors about Ferrari's credibility.

Senner further argues that the fact that jurors found that he had distributed exactly 1,000 kilograms of marijuana, when Ferrari testified Senner admitted to distributing 3,000 pounds, reflects that the jury was divided on Ferrari's credibility and ultimately chose a compromise amount. But the jury may have simply found the 1,000 kilograms because that was the amount charged. For these reasons, the jury's three inquiries during deliberations and the jury's finding that Senner distributed exactly 1000 kilograms of marijuana do not otherwise persuade us that the prosecutor's improper vouching tipped the scales in the prosecution's favor on the issue of the credibility of Ferrari's testimony about his interview with Senner.

10

will accept or reject." And after trial, before the jury's deliberations, the court again instructed jurors that "[i]f you believe that any witness's testimony has been discredited, you may reject all or part of the testimony of that witness, and you may give the testimony such credibility as you think it deserves;" that "[t]he testimony of a law enforcement officer is entitled to no special or exclusive sanctity;" and that jurors were the "exclusive judges" of the witnesses' credibility, and could accept or reject all or part of any witness' testimony. See Harlow, 444 F.3d at 1265 (reviewing for plain error and holding that, "to the extent the impermissible vouching occurred, the district court's credibility instructions cured any error"). The district court also reiterated, after trial but before jury deliberations, that the attorneys' statements are not evidence. Cf. United States v. Roberts, 185 F.3d 1125, 1144 (10th Cir. 1999) (reviewing remarks prosecutor made during closing argument for plain error and holding district court's instructions that attorneys' statements were not evidence helped cure any impermissible vouching). Even the prosecutor, during her closing argument, told jurors it was up to them to determine whether they believed Trooper Ferrari or not. Cf. id. (reviewing for plain error and rejecting argument prosecutor impermissibly vouched for witness' credibility in part because "the prosecutor explicitly disclaimed any ability to vouch for witness credibility, and judge's instructions to the jury cured any error").

In light of this record as a whole, we cannot conclude that there is a

11

reasonable probability that, had the prosecutor not elicited Trooper Ferrari's testimony suggesting that there were four officers who could corroborate that Senner admitted to distributing 3,000 pounds of marijuana, the jury would not have found that Senner conspired to distribute 1,000 kilograms of marijuana. Senner, therefore, is unable to meet the plain-error test's third prong.

## IV.    CONCLUSION

For the foregoing reasons, we AFFIRM Senner's conviction and sentence.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge