# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1052

_____

United States of America,

        Appellee,

v.

Brian Gene McCoy,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  District of North Dakota.
\*
\*
\*

_____

Submitted: June 12, 2007
Filed: August 7, 2007

_____

Before LOKEN, Chief Judge, ARNOLD and COLLOTON, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Brian McCoy was indicted for second-degree murder, *see* 18 U.S.C. §§ 1111, 1152, and for using and carrying a firearm in furtherance of a crime of violence, *see* 18 U.S.C. § 924(c)(1)(A). The jury acquitted Mr. McCoy of second-degree murder but convicted him of the lesser-included offense of voluntary manslaughter and the firearm offense. The district court[1] sentenced Mr. McCoy to 216 months' imprisonment and he appeals his sentence. We affirm.

_____

[1] The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

## I.

The evidence at trial tended to show the following. At the time of the offense conduct, Mr. McCoy and his wife, Hanni, lived with Hanni's mother in a house on the Fort Berthold Indian Reservation in North Dakota. Hanni's sister, Dorothy, and her brother, Wayne, lived in the same house. Mr. McCoy's brother, Brent, lived in a motor home parked beside the house. On the day that the offense occurred, Hanni went to the motor home where she discovered that Mr. McCoy and Brent had been drinking with an underage girl and spied Brent in bed with her. Hanni expressed her extreme displeasure about the situation and warned Mr. McCoy that Wayne would likewise disapprove.

Wayne then went out to the motor home and knocked on the door, yelling to Mr. McCoy and Brent that they should not be entertaining a minor. Dorothy, who had followed Wayne outside, watched as Mr. McCoy exited the motor home with a gun in hand, exchanging words with Wayne. She then went back inside, but heard gunshots that prompted her to return outside where she saw Wayne holding his left side and exclaiming that Mr. McCoy had shot him. Wayne was shot three times, once in his abdomen, once in his forearm, and once in his back left shoulder. Dorothy called for help and began driving Wayne to the hospital with Hanni when an ambulance met them on the way. At the hospital, Wayne was pronounced dead from multiple gunshot wounds.

During this time, Mr. McCoy and Brent also left the residence by car, with plans to go to the hospital or the police department. The police apprehended them and seized the handgun that Mr. McCoy used to shoot Wayne from the dashboard of their car. The officers then took Mr. McCoy to the hospital because they were concerned about his condition. While he was being examined at the hospital, Mr. McCoy said that he had shot Wayne twice and that he hoped that Wayne died.

Although Mr. McCoy had not made any statements to this effect previously, he testified at trial that the discharge of the gun was accidental. He said that Wayne grabbed at the gun during their altercation and it fired accidentally. Mr. McCoy also said that Wayne's shoulder might have bumped the gun, causing it to discharge. The jury rejected Mr. McCoy's testimony and convicted him of voluntary manslaughter and of using and carrying a firearm in furtherance of a crime of violence.

At the sentencing hearing, the district court determined that the advisory guidelines range for the voluntary manslaughter charge was 87 to 108 months' imprisonment, based on a total offense level of 29 and a criminal history category of I. The district court further determined that the firearm conviction required a ten-year mandatory minimum sentence, to run consecutively, because the gun discharged. *See* 18 U.S.C. § 924(c)(1)(A)(iii). The district court then sentenced Mr. McCoy to 216 months in prison: The ten-year mandatory minimum on the gun charge plus a middle-of-the-range sentence (96 months) on the voluntary manslaughter charge.

As support for its sentence, the district court stated that it did not believe Mr. McCoy's explanation of how the gun discharged. The court believed that the jury's convictions spoke loudly that voluntary manslaughter and the firearm offense were the appropriate convictions. The district court also revealed that it had talked to the jury after the trial and commented that "most of the jurors that I talked to were convinced that this was a second degree murder case." The court observed in addition that "if there had not been a lesser included offense in the jury instructions in this case, there's no doubt in my mind that 12 jurors would have convicted you of second-degree murder." The district court noted as well that Wayne had been shot in the back, something that did not speak well for Mr. McCoy and in fact indicated that second-degree murder would perhaps have been the more appropriate conviction. The district court was also troubled by Mr. McCoy's statements at the hospital following the incident, as it felt that these statements were not typical of someone who was sorry for what happened or whose actions were accidental. Based on these considerations, the

district court denied Mr. McCoy's request for a downward variance on the voluntary manslaughter conviction.

## II.

Mr. McCoy first argues that he should not have been subject to the ten-year mandatory minimum on the firearm conviction absent a finding that he intended to discharge the gun. We note that the relevant statute, which requires a sentence of at least ten years of imprisonment "if the firearm is discharged" "during and in relation to any crime of violence," does not on its face require a finding of intent. *See* 18 U.S.C. § 924(c)(1)(A). But we do not reach this issue because we hold, for the reasons that follow, that Mr. McCoy waived it.

Mr. McCoy never raised this argument below. What is more, he expressly contradicted it. A memorandum that he submitted to the district court before sentencing stated: "Because [Mr. McCoy] was convicted on count two, the gun charge, 18 U.S.C. § 924(c)(1)(A)(iii), and U.S.S.G. § 2K2.4(b) require that this Court impose the minimum term of imprisonment required by statute, ten years, and that this ten year sentence run consecutive to whatever sentence the Court imposes with respect to the voluntary manslaughter conviction." And at the sentencing hearing, Mr. McCoy's attorney specifically said, "[c]ertainly you have to impose the 120." Mr. McCoy's strategy at sentencing was simply to argue for a downward variance from his advisory guidelines range on the voluntary manslaughter charge that would result in a total sentence of thirteen years (156 months).

"The Supreme Court has distinguished between a right that is inadvertently left unasserted and one that is intentionally relinquished or abandoned, noting that the latter constitutes a waiver that extinguishes a claim altogether." *United States v. Gutierrez*, 130 F.3d 330, 332 (8th Cir. 1998) (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)); *see also United States v. Thompson*, 289 F.3d 524, 526-27 (8th Cir. 2002). In *Olano*, the Supreme Court held that "[d]eviation from a legal rule is 'error'

unless the rule has been waived." *Olano*, 507 U.S. at 732-33. It went on to say: "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.' " *Id.* at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458,464 (1938)). Because Mr. McCoy expressly acknowledged the application of the ten-year mandatory minimum below, he has waived his right to argue against its application here.

### III.

Mr. McCoy also contends that the district court abused its discretion by relying in part on its *ex parte*, post-verdict conversation with members of the jury in fixing the sentence. Because Mr. McCoy did not raise an objection at the sentencing hearing to the court's reliance on this conversation, we review the record for plain error. Fed. R. Crim. P. 52(b); *Olano*, 507 U.S. at 731. Our task therefore is to determine if there was an error that was plain and that affected Mr. McCoy's substantial rights. *See Olano*, 507 U.S. at 732. Even if there was, we will correct the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. at 736 (internal quotation marks and citation omitted).

To affect substantial rights "in most cases ... the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id*. at 734. We do not see any reason why the ordinary rule should not apply here, and we do not believe that the district court's conversation with the jury (even if improper) affected Mr. McCoy's sentence. The court noted that it had heard all of the evidence presented at trial and had reached its own conclusions as to the credibility of the witnesses. The court stated that it was particularly influenced by the fact that the victim had been shot in the back and by the statements that Mr. McCoy made at the hospital immediately following the shooting. The court noted that both of these facts indicated that second-degree murder might have been the more appropriate conviction. The district court, however, then sentenced Mr. McCoy to the middle of the advisory

-5-

guidelines range for voluntary manslaughter – not the high end, and not an upward departure to a sentence that would reflect a second-degree murder conviction. Considering all this, we see no reasonable likelihood that the district court's sentence would have been different if it had not talked with the jury. There was therefore no plain error here that affected Mr. McCoy's substantial rights.

IV.

Finally, Mr. McCoy maintains that his sentence was unreasonable because it did not allow for different sentences for defendants convicted of his crimes but whose crimes were committed under different circumstances or included different levels of reprehensible conduct. Mr. McCoy appears to be arguing that he should have received a lesser sentence because his conduct was less culpable than that of some others convicted of voluntary manslaughter and that the district court should have left room to impose greater sentences on others convicted of voluntary manslaughter whose actions were more heinous than Mr. McCoy's. We find Mr. McCoy's argument unpersuasive.

We have held that sentences within the advisory guidelines range, as Mr. McCoy's is, are presumptively reasonable. *United States v. Bryant*, 446 F.3d 1317, 1319 (8th Cir. 2006); *see also United States v. Rita*, 127 S. Ct. 2456, 2462-68 (2007). Here, the district court sentenced Mr. McCoy to the middle of the advisory guidelines range on the voluntary manslaughter charge, meaning that, even within the advisory guidelines framework, it left considerable room to impose greater sentences on others whose conduct is more reprehensible. Mr. McCoy has, moreover, failed to cite any cases that lead us to conclude that his sentence was unreasonable. Many of the cases that he relies on were decided before the advent of the sentencing guidelines and thus the sentences handed down in them are of no particular relevance. And, as the government points out in its brief, the base offense level for voluntary manslaughter was increased from 25 to 29 in November of 2004, making even more of the cases that Mr. McCoy cites unhelpful for comparison purposes. Finally, of the

two cases cited in which the sentences were imposed after the 2004 guidelines revisions, both defendants received sentences greater than Mr. McCoy's. We therefore find no merit to Mr. McCoy's sentencing disparity arguments and uphold his sentence as reasonable.

Affirmed.

_____