# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2414

_____

United States of America,        *

                 Appellee,    *

       *   Appeal from the United States
    v.                 *   District Court for the
       *   Southern District of Iowa.

Ontario Rush-Richardson,    *

              Appellant.    *

_____

Submitted: July 24, 2009
Filed: August 4, 2009

_____

Before WOLLMAN, RILEY, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

A federal grand jury indicted Ontario Rush-Richardson (Rush-Richardson) for possession with intent to distribute cocaine base (crack cocaine), and possession of firearms in furtherance of drug trafficking. After pleading guilty to the drug charge, Rush-Richardson proceeded to trial on the firearms charge. During trial, the district court overruled Rush-Richardson's motions for judgment of acquittal and his objection to the jury instructions. The jury convicted Rush-Richardson on the firearms charge. At sentencing, the district court denied Rush-Richardson a downward adjustment based on acceptance of responsibility for the drug charge.

Rush-Richardson now appeals the district court's rulings and his sentence. We reverse based on the district court's jury instructions.

## I.     BACKGROUND

On August 19, 2007, Davenport, Iowa, police officers administered a controlled buy of crack cocaine from Rush-Richardson. The officers then obtained and executed a search warrant for Rush-Richardson's house. During the search, officers found crack cocaine, marijuana, other drug related items, and three firearms.

On September 12, 2007, a federal grand jury returned an indictment charging Rush-Richardson with (1) possession with intent to distribute at least 50 grams of a mixture or substance containing crack cocaine, in violation of 18 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); (2) possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (3) forfeiture under 21 U.S.C. § 853.

Rush-Richardson pled guilty to the drug charge in count one of the indictment, and proceeded to trial on the firearms charge of count two. Rush-Richardson moved for judgment of acquittal at the close of the government's evidence and again at the close of all evidence. The district court denied both motions. Before the jury was instructed, Rush-Richardson's counsel objected to Jury Instruction number 5 (Instruction 5), which was based on Eighth Circuit Model Criminal Jury Instruction 6.18.924C. The district court overruled the objection, and instructed the jury using Instruction 5. During deliberations, the jury sent a note to the district court asking, "#5 - can you please rephrase or elaborate on page 6 #5 regarding 'possessed in furtherance of[.]' Can we get some clarification on the language? Thank you." The district court asked the jury for a more specific question, and the jury returned a note stating, "No clarification is needed." The jury then convicted Rush-Richardson on count two, and in a special interrogatory, found Rush-Richardson possessed all three firearms seized from his home in furtherance of drug trafficking.

Following Rush-Richardson's conviction, a presentence investigation report (PSR) calculated an advisory United States Sentencing Guidelines (U.S.S.G. or Guidelines) range of 135 to 168 months imprisonment on the drug charge, and a mandatory consecutive 60-month sentence on the firearms charge. The PSR also recommended denying Rush-Richardson a two-level downward adjustment under U.S.S.G. § 3E1.1(a) for acceptance of responsibility on the drug charge. At sentencing, Rush-Richardson argued he was entitled to the downward adjustment. The district court denied the downward adjustment and sentenced Rush-Richardson to the bottom of Rush-Richardson's advisory Guidelines range on the drug charge, 135 months imprisonment, and a consecutive mandatory minimum 60-month sentence on the firearms charge. This appeal follows.

## II.    DISCUSSION

Rush-Richardson argues the district court: (1) erred in overruling Rush-Richardson's motions for judgment of acquittal because there was insufficient evidence to convict him; (2) erroneously overruled Rush-Richardson's objection to Instruction 5; and (3) improperly denied Rush-Richardson a two-level downward adjustment for acceptance of responsibility on the drug charge. We reverse the district court and remand the case based upon Instruction 5, but we will first address Rush-Richardson's sufficiency of the evidence claim. See Burks v. United States, 437 U.S. 1, 18 (1978) (holding "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient"); Palmer v. Grammar, 863 F.2d 588, 592 (8th Cir. 1988) (stating "it is well-established that Burks does not allow an appellate court to reverse for trial error and remand for retrial while ignoring a claim of insufficient evidence").

### A.    Sufficiency of the Evidence

Rush-Richardson first argues the district court erroneously denied his motions for judgment of acquittal because there was insufficient evidence for a reasonable jury to convict him of knowingly possessing firearms in furtherance of a drug trafficking

crime. Rush-Richardson contends the government failed to produce enough evidence for a jury to find a nexus between the drugs and the firearms because (1) there was no evidence Rush-Richardson knew about the firearms, (2) there was no evidence the firearms were in close proximity to the drugs, and (3) the firearms were not accessible to further the drug trafficking crime.

"We review the denial of a motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the verdict." United States v. Wallenfang, 568 F.3d 649, 656 (8th Cir. 2009) (internal quotations and citations omitted). "We will reverse only if no reasonable jury could have found the accused guilty." Id. (internal quotations and citations omitted).

"To secure a conviction under [18 U.S.C.] § 924(c)(1)(A), the government must present evidence from which a reasonable juror could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of 'furthering, advancing or helping forward' the drug crime." United States v. Sanchez-Garcia, 461 F.3d 939, 946 (8th Cir. 2006) (citation omitted). "Accordingly, evidence that the defendant simultaneously possessed drugs and a firearm, standing alone, would not warrant submitting the charge to the jury." Id. (citation omitted). "Instead, the jury must be able to infer that the defendant's possession of the firearm facilitated the drug crime, through evidence that the firearm was used for protection, was kept near the drugs, or was in close proximity to the defendant during drug transactions." Id. at 946-47 (citation omitted).

The government produced sufficient evidence for a jury to infer a nexus between the firearms and Rush-Richardson's drug trafficking offense. The government provided testimony that Rush-Richardson appeared to be the only resident of the house where the firearms were found. One firearm was found in a closet in the bedroom across the hallway from Rush-Richardson's bedroom where cocaine was found, and the other firearms were found in the kitchen, fifteen to twenty feet away

from the bedrooms, with drug trafficking paraphernalia and a baggie with cocaine residue. The government's expert also testified "drug dealers will often use weapons to protect themselves," "guns seem to go hand in hand with the drugs," and drug dealers "can stash guns anywhere." Although, as we discuss later, the evidence in this case made it a close question regarding Rush-Richardson's guilt, a reasonable jury could conclude, based upon this evidence, that Rush-Richardson possessed the firearms and kept the firearms accessible and in close proximity to the drugs for protection. See Sanchez-Garcia, 461 F.3d at 942-43, 947 (holding there was sufficient evidence for a reasonable jury to conclude the defendant was guilty of possessing a firearm "in furtherance of" methamphetamine distribution when the residence where the firearm was found was identified as the defendant's, a government witness testified to the link between drug dealing and firearms for protection, and the firearm was kept close to drugs and accessible for protection because the "saleable quantities of drugs and drug packaging paraphernalia" were found in a kitchen adjacent to a bedroom where the firearm was found). Therefore, the district court did not err in denying Rush-Richardson's motions for judgment of acquittal.

### B.    Jury Instruction

Rush-Richardson next contends the district court erred in overruling his objection to Instruction 5 because the definition of "possession in furtherance of" in Instruction 5 misstated the law. Rush-Richardson maintains Instruction 5 erroneously defined "possession in furtherance of" with the language of the lower standard of "during and in relation to." Thus, Rush-Richardson asserts the district court's submission of Instruction 5 was both an abuse of discretion and plain error.

"Generally, we review jury instructions for abuse of discretion," and will affirm the district court if the instructions, as a whole, sufficiently submit the issues to the jury. United States v. Farish, 535 F.3d 815, 821 (8th Cir. 2008) (citations omitted). Rush-Richardson's counsel objected to Instruction 5, arguing its definition of "possession in furtherance of" was inconsistent, contradictory, and confusing.

However, Rush-Richardson's counsel did not argue Instruction 5 misstated the law.[1] Thus, we review Instruction 5 for plain error. See United States v. Kent, 531 F.3d 642, 655 (8th Cir. 2008) (reviewing an 18 U.S.C. § 924(c) jury instruction under plain error review because the defendant failed to object on the specific ground appealed); United States v. Young, 702 F.2d 133, 136 (8th Cir. 1983) (stating an objection to a jury instruction is waived unless made "in a timely and specific manner"). Plain error review requires Rush-Richardson to show (1) an error, (2) that was "plain," (3) "affects substantial rights," and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 735-36 (1993) (internal marks and citations omitted).

Under 18 U.S.C. § 924(c)(1)(A), a defendant is subject to a consecutive mandatory minimum 5-year sentence if he or she (1) used or carried a firearm "during and in relation to" a crime of violence or drug trafficking crime, or (2) possessed a firearm "in furtherance of" a crime of violence or drug trafficking crime. See United States v. Brown, 560 F.3d 754, 766-67 (8th Cir. 2009). Rush-Richardson was charged with possessing firearms in furtherance of a drug trafficking crime. Instruction 5 provided the jury with the elements of § 924(c) and defined "possession in furtherance of" as,

> With respect to the second element, the phrase "possessed in furtherance of" means that the firearm must have some purpose or effect with respect to the aforementioned possession of crack cocaine with intent to distribute. Its presence or involvement cannot be the result of accident or coincidence. The firearm must facilitate or have the potential to facilitate the offense of possession with intent to distribute crack cocaine.

---

[1]At oral argument, Rush-Richardson's counsel conceded he did not argue Instruction 5 misstated the law.

The district court's submission of Instruction 5 was plain error. In <u>Kent</u>, 531 F.3d at 654-55, we analyzed the exact language of Instruction 5, and held it was plain error to give this instruction for the "possession in furtherance of" offense of § 924(c). We reasoned the definition of "possession in furtherance of" given in Instruction 5 is almost identical to the Supreme Court's definition of "in relation to." <u>Id.</u> at 654. We noted our case law has "determined that 'in furtherance of' is a slightly higher level of participation than 'during and in relation to.'" <u>Id.</u> at 655 (citing <u>United States v. Gamboa</u>, 439 F.3d 796, 810 (8th Cir. 2006)). Thus, the instruction constitutes plain error because it "would allow the jury to convict on the lesser finding of 'in relation to.'" <u>Kent</u>, 531 F.3d at 655; <u>see also</u> <u>Brown</u>, 560 F.3d at 767-68.

Instruction 5 also affected Rush-Richardson's substantial rights. "In order to affect substantial rights, the error must have been prejudicial." <u>Kent</u>, 531 F.3d at 655-56 (citing <u>Olano</u>, 507 U.S. at 734; <u>United States v. Dominguez Benitez</u>, 542 U.S. 74, 83 (2004)). "An error is prejudicial if the defendant shows 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" <u>Id.</u> at 656 (quoting <u>Dominguez Benitez</u>, 542 U.S. at 82). "The defendant's burden is to 'satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.'" <u>Id.</u> (quoting <u>Dominguez Benitez</u>, 542 U.S. at 83) (internal marks omitted).

In <u>Kent</u>, 531 F.3d at 647, the defendant was charged with two counts of possession of a firearm in furtherance of a drug trafficking crime. The first count involved a firearm and crack cocaine found on the defendant during an arrest. <u>Id.</u> The second count involved a firearm, cash, and crack cocaine found in the defendant's girlfriend's bedroom. <u>Id.</u> We did not determine whether the defendant's substantial rights were affected. <u>Id.</u> at 656. We held the fourth plain error requirement was not met because the defendant did not argue in the district court or on appeal that the jury instruction misstated the law. <u>Id.</u> at 656-57. However, we did state the evidence

-7-

created "a close question" whether the defendant's substantial rights were affected. Id. at 656.

Subsequently, in Brown, 560 F.3d at 762, 766, 767-68, we analyzed a jury instruction which was used for a charge that alleged the defendant used, carried, and possessed a firearm during and in relation to a conspiracy to distribute marijuana. Because the government only presented evidence that the defendant possessed the firearm, and did not present any evidence that the defendant carried or used the firearm, we held the defendant's substantial rights had been affected. Id. at 767-68. We stated, "By allowing the jury to convict based on possession of a firearm merely 'in relation to' the drug conspiracy, instead of in furtherance of that conspiracy, the instructions likely affected the verdict on [the firearm charge]." Id. at 768.

In this case, the jury was given an improper instruction defining the elements of the § 924(c) offense with which Rush-Richardson was charged, and the jury was allowed to convict Rush-Richardson of the possession offense based on the lower "during and in relation to" standard. See Kent, 531 F.3d at 655. There is a reasonable probability this error affected Rush-Richardson's verdict. Brown, 560 F.3d at 768. Further, although there was sufficient evidence for a jury to convict Rush-Richardson, it was a close question whether the evidence supported the slightly higher level of proof for "in furtherance of" a drug trafficking offense. The jury found Rush-Richardson possessed the firearms, but the government presented no definitive evidence of Rush-Richardson's fingerprints on, or physical evidence connecting Rush-Richardson to, the firearms. One fingerprint was discovered on one firearm, and that fingerprint was not Rush-Richardson's. The firearms also were found in different rooms than the measurable quantities of drugs. The crack cocaine was found in Rush-Richardson's bedroom, and the marijuana was found in the living room. One firearm was discovered in a diaper bag in a closet in the bedroom next to Rush-Richardson's bedroom, and the other two firearms were found inside a plastic grocery sack on top of the kitchen cabinets.

The evidence here is relatively weaker to support a conviction "in furtherance of" compared to the evidence presented in Kent, where we said the evidence presented a "close question" whether substantial rights had been violated.  See Kent, 531 F.3d 642-43 (describing crack cocaine and loaded firearm in defendant's pockets, as well as cocaine, cash, and loaded firearm in defendant's bedroom).  Thus, although "in furtherance of" is only a slightly higher standard than "during and in relation to," we are convinced, in light of our statement in Kent and our holding in Brown, the evidence in Rush-Richardson's case suggests Rush-Richardson's substantial rights were affected because the evidence created a reasonable question whether the firearms were used "in furtherance of" crack cocaine distribution, which tends to undermine our confidence in the jury's verdict.  See Brown, 560 F.3d at 767-68; Kent, 531 F.3d at 647, 656.

The proceedings also amplified the effect of Instruction 5 on Rush-Richardson's substantial rights.  The jury's attention was drawn specifically to the definition of "possession in furtherance of" found in Instruction 5.  During closing argument, one of the government's first points was to note the importance of the definition.  The government then recited the definition to the jury and argued that portions of the definition "make[] sense" because the firearm "must have the *potential* to facilitate the offense of possession with intent to distribute crack cocaine."  (Emphasis added).

During deliberations, the jury was apparently initially confused by, or had some concern with, the erroneous definition, because the jury's first note to the district court specifically asked for clarification or elaboration on the definition.  Although the jury eventually withdrew its clarification request, the government's closing argument and the jury's first note imply the erroneous definition in Instruction 5 was influential to, and a closely scrutinized part of, the jury's verdict.  See Francis v. Franklin, 471 U.S. 307, 324 n.9 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal

case and strive to understand, make sense of, and follow the instructions given them.").

Thus, because (1) the jury was given a plainly erroneous jury instruction, (2) the evidence created a close question whether the firearms were possessed "in furtherance of" drug trafficking, (3) in closing arguments, the jury's attention was drawn specifically to the improper definition in Instruction 5, and (4) the jury was focused upon and confused by, or concerned with, the erroneous definition in Instruction 5, Rush-Richardson has presented a reasonable probability that, but for the jury being given the erroneous Instruction 5, the jury verdict would have been different.

Finally, because the jury was given an erroneous jury instruction in a close case, which instruction was highlighted by the government in closing argument and was unclear to the jury, the fairness and integrity of Rush-Richardson's trial was seriously affected by Instruction 5. See Brown, 560 F.3d at 768 (holding the fairness of a defendant's trial was seriously affected when the § 924(c) jury instruction was erroneous, there was no evidence of the charged crime, and the government's closing argument "exacerbated the error"). We conclude the district court committed plain error in giving Instruction 5, and Rush-Richardson's conviction on count two of the indictment should be reversed and vacated. See id. at 772.

## C. Downward Adjustment

Because we reverse Rush-Richardson's conviction on count two based upon Instruction 5, we need not address Rush-Richardson's arguments regarding the downward adjustment.

## III. CONCLUSION

Rush-Richardson's conviction on count two of the indictment is reversed and vacated, and the case is remanded to the district court for proceedings consistent with this opinion.

COLLOTON, Circuit Judge, concurring.

I concur in the holding that there was sufficient evidence to convict Ontario Rush-Richardson for violating 18 U.S.C. § 924(c), and I concur in the judgment remanding for a new trial, in view of our court's decisions in *United States v. Brown*, 560 F.3d 754 (8th Cir. 2009), and *United States v. Kent*, 531 F.3d 642 (8th Cir. 2008). Given the location of the firearms and ammunition seized in Rush-Richardson's residence, this was a reasonably close case on whether the government established proof beyond a reasonable doubt under a jury instruction that called for a verdict on what was the equivalent of possession "during and in relation to" drug trafficking. If a comparable instruction created a "close" question under the third prong of plain error analysis on the evidence in *Kent*, 531 F.3d at 656, and crossed the threshold in *Brown* – where a revolver, ammunition, scale, $16,000 cash, and small amount of marijuana were seized from a vehicle owned by the defendant and a semi-automatic rifle, ammunition, and 35 pounds of marijuana were seized from a storage unit leased by a co-conspirator, 560 F.3d at 761, 767-68 – then it seems to follow that Rush-Richardson's substantial rights were affected by the instruction in this case. Our cases might have gone in a different direction on the substantial rights prong of plain error analysis, given the narrow circumstances in which it appears that a firearm would be possessed "during and in relation to" drug trafficking but not "in furtherance" of drug trafficking, *see United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004), but I ultimately agree with the disposition of this case in light of *Brown* and *Kent*.

I add two observations. First, while the court cites the prosecutor's statement in final argument that a firearm possessed "in furtherance" of drug trafficking "must have the *potential* to facilitate the offense of possession with intent to distribute crack cocaine," *ante*, at 9, the court does *not* hold that this argument misstated the law under 18 U.S.C. § 924(c). To the contrary, in *Kent*, we specifically rejected the defendant's argument that this same language – "[t]he firearm must . . . have the potential to facilitate the offense of possession with intent to distribute crack cocaine" –

incorrectly defined the "in furtherance" element of § 924(c). 531 F.3d at 654. The court explained that "'in furtherance of' is not a factual requirement that the firearm advance the crime, but rather a requirement that the person possess the gun with the *intent* of advancing the crime." *Id.* Nothing in this decision calls into question the conclusion in *Kent* that § 924(c) "authorizes conviction where the defendant intended the firearm to advance or further the crime, but it did not actually do so." *Id.*

Our cases explain that the first two sentences of the "in furtherance" instruction given in Rush-Richardson's case, *see ante*, at 6, not the third sentence, misstate the law under § 924(c). *See Brown*, 560 F.3d at 767 ("The instructions incorrectly defined 'possession in furtherance of' to mean that 'the firearm must have some purpose of effect with respect to the [drug trafficking crime]; its presence or involvement cannot be the result of accident or coincidence.'"); *Kent*, 531 F.3d at 654-55. The prosecutor in this case did emphasize the first two sentences of the instruction during final argument, immediately before making the statement quoted by the court. T. Tr. 229. Therefore, I agree that "in closing arguments, the jury's attention was drawn specifically to the improper definition in Instruction 5." *Ante*, at 10.

Second, the opinion in this case relies on the absence of Rush-Richardson's fingerprints on the firearms, or physical evidence connecting him to the firearms, to support a conclusion that the erroneous jury instruction affected Rush-Richardson's substantial rights, *ante*, at 8, but the significance of these factors is overstated. The evidence at trial was that investigators found no fingerprints on the exterior of any of the three firearms. One fingerprint was found underneath the hand grips on one firearm after the hand grips were removed from the weapon during the fingerprinting process. The examiner testified that this fingerprint could have been left during the manufacturing process, or by the last person who removed the grips. When asked about the lack of fingerprints on the exterior of the guns, the examiner explained that there is a "very low success rate" in "finding identifiable fingerprints on firearms," for "several reasons, including the way a manufacturer designs a firearm, especially a

-12-

handgun." He testified that the surface of a firearm grip is "not suitable for leaving good latent fingerprints," and that other areas that a person normally would touch while operating a gun are "checkered" and "multisurfaced," rather than a "smooth, nice, easy surface" on which a person "would leave a consistent, nice fingerprint." He further explained that latent prints are usually very fragile, and that other surfaces, such as a pocket, a waistband, or a gun case lined with cloth, would damage the prints when making contact with the firearm. T. Tr. 172-75.

The absence of fingerprints could support an argument that there was reasonable doubt about whether Rush-Richardson *possessed* the firearms, although the examiner's unchallenged testimony in this case suggests that any inference drawn from the fingerprint evidence is weak, and Rush-Richardson did not even argue the point to the jury. In any event, the jury in this case found that Rush-Richardson did possess the guns, and the error in the jury instruction had no effect on its finding of possession. The lack of fingerprints or physical evidence is relevant on this appeal only if it tends to show that Rush-Richardson did possess the firearms "during and in relation to" drug trafficking, but did not possess them "in furtherance of" drug trafficking. There might be hypothetical scenarios in which this is so – such as where a drug trafficking defendant posits that a firearm was inadvertently left behind at his home by a drug buyer, *see Combs*, 369 F.3d at 933 – but this case was tried on the theory that Rush-Richardson possessed the firearms for protection of his drug trafficking activity, and the principal defense was that Rush-Richardson did not even know about the guns. Given that the jury found knowing possession by Rush-Richardson under a proper instruction, the absence of fingerprints and physical evidence does not in my view materially advance Rush-Richardson's showing that the mistaken jury instruction affected his substantial rights on the "in furtherance" element.

_____