# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 09-1954

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| Marc Sean Wisecarver, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

_____

Submitted: February 10, 2010
Filed: March 22, 2010

_____

Before WOLLMAN, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Following a jury trial, Marc Sean Wisecarver was convicted of one count of depredation of government property, in violation of 18 U.S.C. § 1361. The district court sentenced him to 36 months' imprisonment. Wisecarver appeals, arguing that the evidence was insufficient to convict him, the district court erred in instructing the jury, and the sentence was improper. Because the supplemental jury instruction was erroneous, we reverse the judgment and remand the case for vacatur of the judgment of conviction and sentence.

I.

Wisecarver owns an undivided one-sixth interest in a tract of Indian trust land on the Pine Ridge Indian Reservation near Manderson, South Dakota, where he lives with his teenage daughter, Robin. Another one-sixth share of the land was in probate, and the final share is reportedly in dispute, although the Bureau of Indian Affairs' (BIA) realty records show that Randall Jerry Hughes owns an undivided four-sixths interest in the land. Wisecarver is the only owner residing on the land.

The BIA arranges leases and collects rents for the trust lands it oversees, which include this piece of property. Hughes filed an application to lease his portion of the property to a third party. To determine the best use for the land in order to calculate a suitable rental price, the BIA sent Duke Bourne, a soil conservationist, to the property on April 29, 2008. Bourne drove to the property in a BIA pickup truck bearing "U.S. Government" license plates. Bourne entered the property through a closed gate marked with a "no trespassing" sign. Wisecarver testified that he saw the truck enter his property but he did not recognize it, so he yelled and waved at the truck.

Bourne drove along the fence line to check the condition of the fence, and Wisecarver retrieved his rifle from his home. Bourne then drove towards horses he saw on the land to check for brands and evidence of ownership. Wisecarver testified that the truck came close to hitting and injuring one of his horses, and he again yelled and waved at Bourne to get his attention. Bourne testified that after inspecting the horses, he turned the truck around and noticed Wisecarver pointing a firearm in his general direction. Bourne drove the truck over to Wisecarver and rolled down the window, and Bourne and Wisecarver began to talk. Bourne identified himself as a BIA employee inspecting the land pursuant to a lease application. Bourne did not present any formal identification, but he offered Wisecarver a phone number to call to verify his identity. Wisecarver refused to call the phone number and accused

Bourne of lying and trespassing. Bourne testified that he "didn't tell [Wisecarver] anything because it was my duty to be on that land. I didn't tell him anything." (Trial Tr. I at 99.) Bourne testified that he did not identify himself as a government employee again because he did not see the point, as Wisecarver had already refused to call the phone number Bourne had provided.

Wisecarver identified himself as the sole landowner, to which Bourne expressed disbelief. Wisecarver then attempted to explain the dispute over the ownership of the property and finally told Bourne to leave the property. Wisecarver testified that he feared that if he allowed Bourne to continue driving on the land, Bourne might harm either Wisecarver or his horses. Wisecarver intended to call the police but knew that it would take approximately 45 minutes for them to reach the property because of its remote location. Instead, Wisecarver told Bourne to get out of the truck and walk off the property. Bourne refused, and Wisecarver chambered a round into the rifle, walked to the front of the truck, and fired a round through the grille and into the engine. Wisecarver testified that before he fired his rifle, the truck's engine was running, he saw Bourne put one hand on the steering wheel and one hand on the gearshift, he heard the engine rev up, and he was afraid that Bourne was going to run him over. He testified that he intended to shoot the radiator "to get [Bourne's] attention off of running me over." (Trial Tr. I at 191.) Bourne then said to Wisecarver, "You just shot a government vehicle," to which Wisecarver responded, "You better get out and start walking or I will shoot you." (Trial Tr. I at 102.) Bourne testified that he thought about calling into his office to tell them what had happened, but instead he turned off his communication radio, left the truck, and walked off the property.

Once off the property, Bourne was picked up by a telephone company driver. Bourne called his BIA office, and the telephone truck driver called the police. Wisecarver also called the police and reported that he shot a hole in the radiator of the vehicle of a trespasser who was chasing his horses. Police came to the property and

saw that the truck was a Government-owned truck with a license plate bearing the words "U.S. Government."

On August 20, 2008, Wisecarver was indicted for assaulting a federal officer. On December 17, 2008, the Government filed a superseding indictment charging Wisecarver with two counts: one count of assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and (b) and one count of depredation of government property in violation of 18 U.S.C. § 1361.

At the trial, the parties stipulated that Bourne was a federal employee and was performing his official duties, that the truck was the property of the Government, and that the damage was in excess of a thousand dollars. The jury was tasked with determining Wisecarver's intent when firing the gun. Wisecarver argued that he had acted in self-defense, which negated any criminal intent. When instructing the jury before deliberations, the trial court gave a self-defense instruction regarding the assault count but did not give a self-defense instruction on the depredation count, stating that Wisecarver offered no evidence to establish that he had acted to defend himself rather than just his property.

During deliberations, the jury asked for the definition of depredation as it pertained to the case, and, in response, the district court instructed the jury "that the shooting of the pickup truck would constitute 'depredation' under the statute 18 U.S.C. § 1361, unless you find that the defendant did not use justifiable force to protect his person or property," adding self-defense to the instruction at Wisecarver's request. (Rec. at 18.) Neither party objected at the time the supplemental instruction was given, but shortly afterwards the Government's counsel reported that her supervisor had discovered that the trial court's answer to the depredation question actually told the jury to find depredation if it found Wisecarver used justifiable force to protect his person or property (based on the double negatives of "unless" and "did not"). After listening to both counsel's comments, the district court said that it was "going to leave

it the way it [was]," presumably because correcting it might cause more confusion. (Jury Questions Tr. at 9.) Later, the jury said that it had reached a verdict on the assault count but could not reach a unanimous verdict on the depredation count. After the district court instructed the jury that it was "advised to continue" its deliberations (Rec. at 23), the jury returned a verdict of not guilty on the assault count and guilty on the depredation count.

Following the jury's verdict, the district court held a sentencing hearing. At the hearing, the district court heard testimony regarding Wisecarver's sometimes troubled relationship with his teenage daughter and also about a heated argument between Wisecarver and his brother. The district court calculated an advisory sentencing guidelines range of 15 to 21 months' imprisonment. The district court then varied upward and imposed a sentence of 36 months' imprisonment.

Wisecarver appeals his conviction and sentence.

## II.

Wisecarver argues that: (1) the evidence was insufficient to support a conviction for depredation; (2) the district court erred in instructing the jury; and (3) the district court committed significant procedural errors in imposing the sentence and imposed a substantively unreasonable sentence.

We must first address Wisecarver's sufficiency of the evidence claim. See Burks v. United States, 437 U.S. 1, 18 (1978) (holding "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient"); United States v. Rush-Richardson, 574 F.3d 906, 909 (8th Cir. 2009) (applying Burks in first addressing a sufficiency challenge before reversing based on an erroneous jury instruction); Palmer v. Grammer, 863 F.2d 588, 592 (8th Cir. 1988)

("[I]t is well-established that <u>Burks</u> does not allow an appellate court to reverse for trial error and remand for retrial while ignoring a claim of insufficient evidence").

A.

Wisecarver argues that the Government did not present sufficient evidence to support a conviction on the depredation count. On a claim for insufficiency of the evidence, we review the evidence in the light most favorable to the verdict. We will reverse only if no reasonable jury could have found Wisecarver guilty beyond a reasonable doubt. <u>See</u> <u>United States v. Plenty Chief</u>, 561 F.3d 846, 854 (8th Cir. 2009).

In his brief, Wisecarver argues that the jury found his testimony credible and acquitted on the assault charge based on his self-defense claim. He then argues that "[b]ecause an objective, reasonable-minded jury could not acquit Wisecarver on [the assault count] and then find him guilty beyond a reasonable doubt based on the same evidence on [the depredation count], the evidence is inherently insufficient to sustain the conviction on [the depredation count]." (Appellant's Br. at 29.) As the Government correctly points out, a defendant may not challenge a conviction because it is inconsistent with another part of the jury's verdict. The Supreme Court has explained, "'[c]onsistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.'" <u>United States v. Powell</u>, 469 U.S. 57, 62 (1984) (quoting <u>Dunn v. United States</u>, 284 U.S. 390, 393 (1932)). "Inconsistent verdicts therefore present a situation where 'error,' in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored." <u>Id.</u> at 65. "Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course." <u>Id.</u>

Rather than specifically explaining why the Government presented insufficient evidence for a conviction on the depredation count, Wisecarver merely claims that "the evidence in this case did not prove the requisite intent on either count by negating self-defense," so "[n]o reasonable jury could convict for depredation of government property after crediting Wisecarver's testimony and finding that he acted in self-defense when he fired the rifle into Bourne's vehicle." (Appellant's Br. at 29, 30.)

Because the parties stipulated that Bourne was a government employee and the vehicle was government property that had damage of over one thousand dollars, the jury was only required to determine whether Wisecarver acted with the requisite intent and whether he demonstrated that he had used justifiable force in protecting himself or his property. The Government presented evidence that Bourne identified himself as a BIA official and offered Wisecarver a phone number he could call and verify Bourne's identity and position. The truck's front license plate, located just below the bullet hole caused by Wisecarver's shot, bore the words "U.S. Government," identifying it as a Government-owned truck. Although Wisecarver presented some evidence to support his self-defense theory, when we view the evidence in the light most favorable to the guilty verdict, there is sufficient evidence for a correctly-instructed reasonable jury to have determined that Wisecarver had the requisite intent to damage Government property, to find that he did not act in self-defense, and to find Wisecarver guilty beyond a reasonable doubt. See Plenty Chief, 561 F.3d at 854.

B.

Second, Wisecarver argues that the district court erred in giving the supplemental jury instruction as to the depredation count. The supplemental instruction stated that, "You are instructed that the shooting of the pickup truck would constitute 'depredation' under the statute 18 U.S.C. § 1361, unless you find that the defendant did not use justifiable force to protect his person or property." (Rec. at 18.) The double negative instructed the jury to find Wisecarver guilty of depredation if it

found that he used justifiable force; both parties acknowledge that the supplemental instruction was an incorrect statement of the law.

The jury specifically requested a definition of depredation. In composing the response, the following discussion took place:

> The Court: Here is my recommended response. "You are instructed that the shooting of the pickup truck would constitute depredation under the statute 18 U.S. Code Section 1361. Please continue your deliberations." What do you think of that response, counsel?
> \*\*\*
> Defense Counsel: I would propose that the only way that would be appropriate is you would have to add "unless you find that such act was done in self-defense." . . . .
> The Court: I think you have a point, counsel. . . . What do you think of this addition? Unless you find that the defendant did not use justifiable force to protect his property. . . .
> Defense Counsel: I would ask that it say, "To protect his person." . . . .
> The Court: How about put in there "to protect his person or property"?
> Defense Counsel: That would be acceptable to me.
> \*\*\*
> The Court: All right. I have heard counsel's comments and I will consider them in putting this phrase, "Unless you find that the defendant did not use justifiable force to protect his person or property." Any problems with that?
> Defense Counsel: No, Your Honor.
>
> [Less than an hour later]
>
> Government's Counsel: I actually showed the Court's last response to my supervisor actually and he caught an error. I just wanted to—I think in it you put "You are instructed that the shooting of the pickup truck would constitute depredation under the statute unless you find that the defendant did not use justifiable force. To protect his person"—probably I think it should say, "Unless you find that the defendant did use justifiable force."

***

Government's Counsel: I imagine they understood what you meant, but I think—

Defense Counsel: I think that's right.  It's just the opposite of what we meant to say.  Because obviously if he did not—yes.  He did not use justifiable force.

***

Defense Counsel: The way I read that is the shooting constitutes depredation unless the defendant did—unless the defendant used justifiable force to protect his person and property.  Then it doesn't constitute that.  I believe that was the message, I think.

The Court: Did not use justifiable force.  He committed depredation.

Defense Counsel: I agree the way the Court says that.  That's a correct statement.  I agree with you, Your Honor.  [Government's Counsel] is probably right as well in that the message we were trying to communicate was probably understandable.  Now that I read it again, I think it's a double negative.  I don't know that correcting it might cause more confusion.

The Court: I am going to leave it the way it is.

(Jury Questions Tr. at 2-5, 7-9.)

The Government first contends that this was an invited error such that it was not a reversible error.  "'It is fundamental that where the defendant "opened the door" and "invited error" there can be no reversible error.'" United States v. Beason, 220 F.3d 964, 968 (8th Cir. 2000) (quoting United States v. Steele, 610 F.2d 504, 505 (8th Cir. 1979)).  However, Wisecarver did not propose the jury instruction; thus, we reject a claim of invited error.  Cf. Roth v. Homestake Mining Co., 74 F.3d 843, 845 (8th Cir. 1996) ("Roth invited the alleged error by introducing an exhibit that included the allegedly [improper evidence]. . . . The alleged erroneous ruling thus is not reversible. An erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned."); United States v. Martinez, 3 F.3d 1191, 1199 (8th Cir. 1993) ("Having specifically requested that

the district court exclude the statistical evidence [of DNA matches], Martinez may not now complain about its exclusion."), cert. denied, 510 U.S. 1062 (1994).

The Government also claims that Wisecarver waived the argument he now makes. The Supreme Court has defined a waiver as a defendant's "'intentional relinquishment or abandonment of a known right.'" United States v. Olano, 507 U.S. 725, 733 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). This is to be distinguished from a forfeiture, which is a "failure to make the timely assertion of a right." Id. "While forfeited claims are subject to appellate review under the plain error standard, waived claims are unreviewable on appeal." United States v. Booker, 576 F.3d 506, 511 (8th Cir.), cert. denied, 130 S. Ct. 777 (2009).

Waiver is a close issue in this case. The Government raised the issue of the problematic instruction not long after it was given to the jury, and a discussion between the parties and the district court ensued. Wisecarver's counsel said that he agreed with the Government that "the message we were trying to communicate was probably understandable. Now that I read it again, I think it's a double negative. I don't know that correcting it might cause more confusion." (Jury Questions Tr. at 9.) The district court then said that it was "going to leave it the way it [was]." (Id.) Obviously, Wisecarver's counsel's statement was not an objection. However, it is not clear that it was an "intentional relinquishment or abandonment" of a known right either. He did not, for example, explicitly say that he had no objection to the double-negative aspect of the instruction or that it was a correct statement of the law that he was willing to be bound by. Cf. Booker, 576 F.3d at 511 (finding waiver when the defendant's counsel stated he "[didn't] have any objections to" the later-claimed error); United States v. McCoy, 496 F.3d 853, 857 (8th Cir. 2007) (finding waiver when the defendant previously conceded that he was bound by a ten-year statutory mandatory minimum sentence and later claimed that he should not have been subject to the mandatory minimum). Wisecarver's counsel did say that he did not have a problem with the addition of the phrase, "to protect his person or property," but that involves

-10-

adding a desired self-defense element to the instruction, not approving of the double negative.  In these circumstances, we hold that Wisecarver's counsel's statement did not constitute a waiver of Wisecarver's rights.

Because Wisecarver failed to object at the time the instruction was offered, we must review the jury instruction under plain error review.  See Rush-Richardson, 574 F.3d at 910 (applying plain error review where the defendant failed to object to a jury instruction that misstated the law).  To reverse under plain error review, we must determine that there was "(1) an error, (2) that was 'plain,' (3) [that] 'affects substantial rights,' and (4) 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'"  Id. (quoting Olano, 507 U.S. at 735-36).

The supplemental instruction was plainly erroneous, because it misstated the law by instructing the jury to find Wisecarver guilty if it found he used justifiable force to defend himself or his property.  The instruction also affected Wisecarver's substantial rights.  "An error is prejudicial if the defendant shows 'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'"  United States v. Kent, 531 F.3d 642, 656 (8th Cir. 2008) (quoting United States v. Dominguez Benitez, 542 U.S. 74, 82 (2004)) (alteration in original).  The defendant must establish "that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding."  Dominguez Benitez, 542 U.S. at 83 (quoting Strickland v. Washington, 466 U.S. 668 (1984)).

As has been repeatedly emphasized, the words that a judge says, particularly to a jury, are very important.  It is axiomatic "that jurors are presumed to follow the court's instructions."  United States v. Espinosa, 585 F.3d 418, 429 (8th Cir. 2009).  Further, the Supreme Court has explained, "'[t]he influence of the trial judge on the jury is necessarily and properly of great weight,' and jurors are ever watchful of the words that fall from him."  Bollenbach v. United States, 326 U.S. 607, 612 (1946) (quoting Starr v. United States, 153 U.S. 614, 626 (1894)).  "Particularly in a criminal

trial, the judge's last word is apt to be the decisive word.  If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptionable and unilluminating abstract charge."  Id.  Thus, the fact that the district court initially properly instructed the jury is insufficient to cure the error, especially because this supplemental instruction was in response to a specific question posed by the jury.  "'When a jury explicitly requests a supplemental instruction, a trial court must take great care to ensure that any supplemental instructions are *accurate* [and] *clear*.'"  United States v. Jenkins-Watts, 574 F.3d 950, 964 (8th Cir. 2009) (quoting United States v. Garcia, 562 F.3d 947, 957 (8th Cir. 2009) (emphasis added), petition for cert. filed, --- U.S.L.W. --- (U.S. Jan. 22, 2010) (No. 09-8991).  "Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depended on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria.  When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy."  Bollenbach, 326 U.S. at 612-13.

Given the high importance placed on jury instructions and on the words of the district court and the fact that the erroneous instruction was a supplemental one, in combination with the already somewhat close case, there is a reasonable probability that, but for the erroneous supplemental instruction, the outcome would have been different.  We note, parenthetically, that if the jury followed the court's erroneous supplemental instruction (as we must presume it did) then its verdicts on the two counts are consistent.  That is, if the jury credited Wisecarver's self-defense evidence, it would acquit him of assault and, because he used justifiable force, would be compelled to convict him of depredation based on the double negative in the supplemental instruction.  Because of the erroneous supplemental jury instruction, the probability of a different outcome is such that our confidence in the guilty verdict is undermined.

Finally, because the jury instruction was given in a close case, in which Wisecarver was found not guilty of the assault charge and found guilty of the depredation charge only after the erroneous supplemental instruction was given, we conclude that the fairness and integrity of the trial was seriously affected. See Rush-Richardson, 574 F.3d at 913 (noting that a plainly erroneous jury instruction that was highlighted to the jury in a close case seriously affected the fairness and integrity of the trial). We conclude the district court committed plain error in giving the supplemental instruction, and Wisecarver's conviction on the depredation count should be reversed and remanded.[1]

C.

Finally, Wisecarver challenges his sentence as procedurally erroneous and substantively unreasonable. Because we reverse Wisecarver's conviction, we need not address his argument regarding his sentence. See Rush-Richardson, 574 F.3d at 913 (holding that because the court reversed the defendant's conviction, it did not have to address his arguments regarding his sentence).

III.

Accordingly, the judgment of the district court is reversed. The case is remanded to the district court with directions to vacate its judgment of conviction on the depredation count and its sentence.

_____

[1]We decline to address Wisecarver's argument that the district court erred in not instructing the jury on self-defense regarding the depredation count initially because we reverse under a plain error review of the supplemental instruction.