[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12261
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cr-00184-JEC-JFK-15

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE ALEJANDRO ANAYA-MEDINA,
a.k.a. Cokis,
a.k.a. Alberto Zuniga-Ortiz,
MARTIN ARREOLA-ROMERO
a.k.a. Sergio Placensia

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(March 11, 2014)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Martin Arreola-Romero appeals his conviction, following a guilty plea pursuant to a plea agreement, for conspiracy to commit money laundering. Mr. Arreola-Romero argues that the district court committed plain error in accepting his guilty plea because, during the Rule 11 hearing, the government misstated the elements of the money laundering offense, and gave an insufficient factual basis to support his guilty plea to that offense, thus rendering his guilty plea unknowing and involuntarily. The government has moved to dismiss Mr. Arreola-Romero's appeal, asserting that Mr. Arreola-Romero knowingly and voluntarily waived his right to appeal his conviction as part of his plea agreement, and that this appeal violates the terms of the conviction appeal waiver.

After careful review of the parties' briefs and the relevant portions of the record, we deny the government's motion, but affirm Mr. Arreola-Romero's conviction.

## I

On May 18, 2010, a federal grand jury sitting in the Northern District of Georgia indicted Mr. Arreola-Romero on 7 counts of a 16-count second superseding indictment. After initially entering a plea of not guilty to all counts, on November 30, 2011, Mr. Arreola-Romero entered a negotiated plea of guilty to Count One, which charged him with conspiracy to distribute and possess with the

intent to distribute narcotics, and Count Seven, which charged him with conspiracy to launder money.

As to Count Seven, the indictment charged three separate objects of the money laundering conspiracy. First, the indictment alleged:

> [T]he defendants . . . would and did conduct and attempt to conduct a financial transaction . . . which involved the proceeds of specified unlawful activity with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

D.E. 505 at 8-9. Second, the indictment alleged:

> [T]he defendants . . . would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer funds and a monetary instrument, that is, United States Currency, from a place in the United States, that is, a place in the Northern District of Georgia, to and through a place outside the United States, that is, Mexico, with the intent to promote the carrying on of specified unlawful activity . . . in violation of Title 18, United States Code, Section 1956(a)(2)(A).

*Id.* at 9. Third, the indictment alleged:

> [T]he defendants . . . would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer funds and a monetary instrument, that is, United States Currency, which was the proceeds of specified unlawful activity . . . from a place in the United States, that is, a place in the Northern District of Georgia, to and through a place outside the United States, that is, Mexico, and . . . knowing that such transportation, transmission and transfer was designed in whole and in part, (1) to conceal and disguise the nature, location, source, ownership, and control of proceeds of said unlawful activity and (2) to avoid a transaction reporting requirement under Federal law; in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i) and (ii).

*Id.* at 9-10.

As part of the plea agreement, the government agreed to dismiss the remaining counts against Mr. Arreola-Romero.  The plea agreement included a conviction and sentence appeal waiver through which Mr. Arreola-Romero "voluntarily and expressly waive[d] the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding. . . ."  D.E. 790-1 at 8.  Mr. Arreola-Romero, his attorney, and the prosecutor signed the agreement.

At the outset of the Rule 11 hearing, the district court explained the rights Mr. Arreola-Romero would be waiving by pleading guilty.  Then, the district court addressed Mr. Arreola-Romero and inquired about his competence to plead guilty and the voluntariness of his plea.  Mr. Arreola-Romero told the court that he was 46-years-old and had never attended school, but that he could read and write in Spanish.  Mr. Arreola-Romero acknowledged that he had signed the plea agreement and that it had been read to him and explained to him in Spanish.

The district court asked the government to state the elements of the offenses charged in Counts One and Seven and the facts supporting each charge, and then proceeded to question Mr. Arreola-Romero regarding his understanding of the charges and their factual bases.  Mr. Arreola-Romero indicated that he understood the charges that he was pleading guilty to; had enough time to talk with his attorney about his decision to plead guilty; was satisfied with his attorney's advice;

4

agreed that the facts the government provided about his involvement in the case were accurate; agreed that no one had threatened or forced him to plead guilty; was freely and voluntarily pleading guilty; and had reviewed the details of the plea agreement with his attorney prior to signing the agreement and that the agreement memorialized all the promises between him and the government.

The district court then explained the maximum sentence that Mr. Arreola-Romero could face as a result of being convicted of Counts One and Seven. The district court further advised Mr. Arreola-Romero that the probation office would prepare a presentence report, and that Mr. Arreola-Romero and his attorney would have an opportunity to review the report and object to any errors or mistakes.

The district court also discussed the terms of the plea agreement, specifically addressing the appeal waiver. The district court explained that Mr. Arreola-Romero had agreed not to challenge his sentence or conviction on appeal or in a future habeas or § 2255 proceeding. He could only appeal his sentence if the court imposed a sentence higher than the guideline range or if the government were to appeal. Mr. Arreola-Romero indicated that he understood the meaning of the waiver provision. The district court also secured confirmation from defense counsel that Mr. Arreola-Romero's agreement to waive the right to appeal was intelligent and knowing. When asked by the district court if he had any questions about the plea agreement, Mr. Arreola-Romero responded "no."

After noting that Mr. Arreola-Romero had admitted guilt as to the charges, that the factual basis was established, and that Mr. Arreola-Romero understood his rights and the maximum and minimum sentences, the district court accepted his guilty plea.  The district court sentenced Mr. Arreola-Romero to 240 months in prison on Counts One and Seven, to run concurrently.  Notably, Mr. Arreola-Romero never moved to withdraw his guilty plea.  Nor did he challenge the validity of his guilty plea on any ground.

## II

The district court, before entering a judgment on a guilty plea, must first "determine that there is a factual basis for the plea."  Fed. R. Crim. P. 11(b)(3).  This requirement protects "a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading."  *United States v. Frye*, 402 F.3d 1123, 1128 (11th Cir. 2005) (internal quotation marks and citation omitted).  For that reason, we agree with the Fifth Circuit that "[e]ven valid waivers do not bar a claim that the factual basis [proffered during the Rule 11 hearing] was insufficient to support the plea."  *United States v. Hildenbrand*, 527 F.3d 466, 474 (5th Cir. 2008).[1]  Accordingly, we deny the government's motion to

---

[1] We note that the Second Circuit also reviews plea proceedings, notwithstanding the existence of an enforceable appeal waiver, where the defendant "argue[s] that the district court failed to satisfy the requirement that there is a factual basis for the plea."  *United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006) ("We note at the outset that despite a provision in the plea agreement stating that Adams will 'not . . . file an appeal or otherwise challenge the conviction or sentence,' we may properly review the plea proceedings. This is because 'a

dismiss and reach the merits of Mr. Arreola-Romero's claim that the district court should not have accepted his guilty plea because the government misstated the elements of the money laundering offense and the factual basis proffered by the government during the plea colloquy was insufficient to support his plea to Count Seven.

### III

Where, as here, the defendant failed to raise a Rule 11 objection before the district court, our review is for plain error. *See United States v. Evans*, 478 F.3d 1332, 1338 (11th Cir. 2007) ("We review Evans' claim that there was an insufficient factual basis for his guilty plea as to Counts One and Two for plain error because Evans did not raise his due process argument or object to a Rule 11 violation in the district court."). To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights. *See id.* If all three conditions are met, we may exercise our discretion to recognize the forfeited error, but only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks and citation omitted). In addition, "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under

---

defendant retains the right to contend that there were errors in the proceedings that led to the acceptance of his plea of guilty,' and he may argue that the district court failed to satisfy the requirement that there is a factual basis for the plea.") (citations omitted).

Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). In evaluating whether there was a Rule 11 error or whether it affected the defendant's substantial rights, "we may consider the whole record, not just the plea colloquy." *United States v. Moriarty*, 429 F.3d 1012, 1020 n.4 (11th Cir. 2005).

Mr. Arreola-Romero contends that the government so misstated the elements of the money laundering conspiracy charge and provided such an insufficient factual basis to support the elements of the charge that his guilty plea was not voluntary or knowing. Specifically, Mr. Arreola-Romero argues that, when stating the elements of the money laundering charge, the government mistakenly indicated that he was pleading guilty to financial transaction money laundering under the concealment prong of the statute, instead of under the intent-to-promote prong that was charged in the indictment. Mr. Arreola-Romero also asserts that, when describing the facts underlying the offense, the government did not provide a sufficient basis to show that he engaged in a financial transaction because the conduct described did not relate to a financial institution or to Mr. Arreola-Romero's ultimate disposition of the drug proceeds. Rather, he argues, it only related to the transportation of the drug proceeds by tractor trailer.

We begin by noting that although the second superseding indictment alleged that Mr. Arreola-Romero engaged in "a conspiracy with multiple objectives, the

evidence need only support one of the purposes of the conspiracy in order to sustain the conviction." *United States v. Harmas*, 974 F.2d 1262, 1267 (11th Cir. 1992) (citing *United States v. Valdes-Guerra*, 758 F.2d 1411, 1414 n.3 (11th Cir. 1985)). *See also United States v. Sanchez*, 790 F.2d 1561, 1563 (11th Cir. 1986) ("Where the conspiracy charge embraces multiple objectives, the evidence need only support one of the purposes of the conspiracy in order to sustain the conviction."). As a general matter, to convict a defendant of conspiracy to commit money laundering, the government must prove that (1) there was an agreement to launder money, and (2) the defendant, knowing the unlawful plan, voluntarily joined the conspiracy. *See United States v. Johnson*, 440 F.3d 1286, 1294 (11th Cir. 2006). As relevant here, a defendant is guilty of money laundering if he conducts a financial transaction involving the proceeds of unlawful activity, "with the intent to promote the carrying on of specified unlawful activity." 18 U.S.C. § 1956(a)(l)(A)(i). A "financial transaction" is defined to include "a transaction which in any way or degree affects interstate or foreign commerce . . . involving the movement of funds by wire or other means." 18 U.S.C. § 1956(c)(4).

At the Rule 11 hearing, the government summarized the elements of Count Seven as follows:

> [T]he elements are that the defendants in some way or manner came to a mutual understanding to violate [18 U.S.C. § 1956] as charged; that is, that, knowing the unlawful purpose of their plan to launder proceeds of unlawful activity that were in fact represented as proceeds

9

of the specified unlawful activity, that is, drug distribution, these defendants engaged in a financial transaction with the intent to promote the carrying on of this unlawful activity, knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of this unlawful activity; that the defendants attempted to transfer the proceeds from a place within the United States to a place outside of the United States or that they engaged in this financial transaction for the purpose of avoiding a transaction reporting requirement under state or federal law.

D.E. 868 at 21:20-22:11.    Though perhaps not artfully stated, the government provided a correct statement of the elements of the money laundering conspiracy charge that it would need to prove to convict Mr. Arreola-Romero under the § 1956(a)(l)(A)(i) objective.    We therefore conclude that there is no merit in Mr. Arreola-Romero's contention that the government misstated the elements of the relevant objective of the money laundering conspiracy charge.

The government then stated that the evidence would establish beyond a reasonable doubt that the defendants were members of an organization that operated in Atlanta and South Texas, and which conspired to violate the federal narcotics and money laundering statutes.    As part of this organization, Mr. Arreola-Romero handled the drug shipments that arrived in the Atlanta area from Texas and coordinated the collection of drug proceeds to ship back to Texas and Mexico. The government additionally stated that:

> [T]he evidence would be that once the organization sent the drugs to Atlanta, distributed them in the Atlanta and surrounding areas, members would collect drug proceeds and place the proceeds back on

10

tractor trailers for transport to Texas en route to Mexico.  Evidence would show that this practice was designed to conceal the nature and source and ownership of the proceeds.  Specifically, one of the seizures is on November 15, 2008.  FBI agents, again working with the Georgia State Patrol, seized over $2 million in drug proceeds from a tractor trailer which had departed the Atlanta area en route to South Texas.  These proceeds were seized around Lagrange, Georgia, which is also within this district. Agents would testify at trial that the proceeds were ultimately to be delivered to Mexico.  The agents would describe that drug proceeds are transported to Mexico and then that allows additional drugs to be released from Mexico back to this area and that promotes the cycle of drug trafficking.

D.E. 868 at 26:25-27:17.  The government also stated that on November 16, 2008 agents intercepted a call between Mr. Arreola-Romero and another defendant discussing the number of bags of money seized from a truck on November 15, 2008.  During the conversation, the co-defendant told Mr. Arreola-Romero that he was told that there were six bags of money seized from the truck.  The government stated that the evidence would show that there were indeed six garbage bags full of money packaged as drug proceeds that were seized from the truck.  The government represented that the November 16th call was just one of the many calls agents intercepted relating to money laundering and drug trafficking.

"The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty."  *Frye*, 402 F.3d at 1128 (internal quotation marks and citation omitted).  Here, the government's proffered factual basis was sufficient for the district court to reasonably conclude (1) that Mr.

11

Arreola-Romero conspired with his co-defendants to conduct a financial transaction—that is the movement of the drug proceeds via tractor trailers for transport from Atlanta to Texas en route to Mexico—and (2) that he did so with the intent to promote the carrying on of the cycle of drug trafficking—that is, once the drug proceeds reached Mexico, additional drugs would be released to be transported from Mexico back to Atlanta. The district court did not err, much less plainly err, in concluding that there was a sufficient factual basis for, and accepting, Mr. Arreola-Romero's guilty plea.

## IV

Mr. Arreola-Romero's conviction is affirmed.

**AFFIRMED.**