Fischer, J., dissenting.
*832 {¶ 50} I acknowledge that it is a close question whether the trial court erred in admitting the evidence of the five knives seized from the possessions of appellant, Joseph L. Thomas. However, I believe that the knife evidence did not have any appreciable impact on the jury's verdict. Therefore, I would reject Thomas's plain-error argument and I respectfully dissent from the majority's judgment.
I. FACTUAL BACKGROUND
{¶ 51} Annie McSween's body was found on the morning of November 26, 2010, the Friday after Thanksgiving. Her hyoid bone was fractured, consistent with manual strangulation, but she died from blood loss caused by a stab wound to her neck that severed her right carotid artery and right jugular vein.
{¶ 52} The autopsy revealed other nonlethal injuries that may have been caused by a knife. McSween had at least five cut wounds to the front of her neck. She had several defensive wounds on her hands. She had been stabbed five times in the back, most likely after her death. The medical examiner opined that the perpetrator used a single-edged knife with a four- to six-inch blade.
*27 {¶ 53} Matthew Miller, a bar patron who played pool with Thomas on Thanksgiving night, testified that he saw Thomas wearing a knife clipped to his jeans on Thanksgiving night. Thomas denied carrying a knife at the bar that night. Thomas's then girlfriend, Linda Roncalli, however, testified that Thomas always had a blue knife clipped to his pants when they were together, that she last saw it around December 2010 or January 2011, and that Thomas later told her that he had lost it. Another ex-girlfriend testified that years earlier, Thomas always carried a blue pocketknife clipped to his pants when they went to bars. She said that the blade of that knife was three to four inches long.
II. LEGAL ANALYSIS
A. Thomas's Knives
{¶ 54} In his tenth proposition of law, Thomas argues that the trial court erred and violated his due-process rights by admitting evidence of the five seized knives, which were not used in McSween's murder or the vandalism discovered at the scene. Because he did not object to this evidence at trial, we review for plain error. State v. Conway , 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 80.
{¶ 55} Investigators never located the knife used in the murder or the vandalism, nor did they find the blue clip-on knife Thomas was seen carrying the night of the murder. They did, however, seize three folding knives and two sheathed knives from Thomas's belongings at his then residence and at Roncalli's home. The state concedes that none of these knives was used in the murder or the vandalism. Yet it introduced all five knives at trial, along with photographs of each. The trial court admitted the knives and photographs, and it allowed testimony concerning them, without an objection by defense counsel.
{¶ 56} The state referred to the five seized knives during its closing argument and at one point held one up to the jury. The prosecutor said:
You recall when Special Agent Kollar took the stand and he showed you the knives that the police seized from the Marine Parkway place where Joe was living. He showed you this knife. And I asked him, I said, how long is the blade of this knife? Now, I'm not suggesting in any way this is the murder weapon, *833 but I'm holding this up to show you, he said this is a four inch blade. So, it was a knife similar, with a blade similar that caused the death of Ann McSween. Something about this big. Didn't take much.
{¶ 57} And later, the prosecutor argued:
*28 Who owns and [sic] knives? Joe Thomas. And I know that there are people out there who collect knives, but he's got six knives. There's that blue knife that we never found that people described * * *. When you asked him in his interviews what about a knife and clip? I don't have one like that. I only have this-I have this little red one I used to carry when I was going out to help my friend at a power line. A little red one. Did you see some of the knives he has? I mean, some of those are full Rambo combat knives. This man is obviously fixed [sic] and likes knives.
B. Plain-Error Analysis
{¶ 58} To prevail on his plain-error claim, Thomas must show that an error occurred, was plain (i.e., obvious), and affected his substantial rights. State v. Barnes , 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). If he makes this three-part showing, the court then must decide whether we will, in our discretion, correct the error. Id .
{¶ 59} This court first must determine whether the trial court's admission of the evidence of the seized knives was erroneous. Thomas currently contends that the knife evidence was inadmissible because it was irrelevant to the state's charges and unfairly prejudicial to his defense. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Under Evid.R. 404(B), evidence of "other acts" may be relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," but such evidence "is not admissible to prove the character of a person in order to show action in conformity therewith." Irrelevant evidence is not admissible. Evid.R. 402.
1. Relevance of the evidence
{¶ 60} It is a close question whether the evidence of the five seized knives was relevant and therefore admissible. This court addressed a similar question in State v. Trimble , 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 102-103, a capital case in which the trial court admitted numerous firearms that were found in Trimble's basement, even though those weapons had not been used in the murders. Although we ultimately held that Trimble's ownership of the firearms was relevant under Evid.R. 404(B) to rebut his claim that he accidentally shot one of his victims, we did so only after rejecting three other arguments made by the state. Id . at ¶ 105-110. We held that weapons not linked to the murders were irrelevant to proving that Trimble acted with prior calculation and design, that he *29 had access to firearms, or that he was familiar with using firearms. Id . at ¶ 106-108.
{¶ 61} We again addressed this issue in State v. Neyland , 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 153, another capital case, in which the trial court admitted photographs of weapons and ammunition unrelated to the charged offenses. Applying our analysis in Trimble , we concluded that weapons and ammunition unrelated to the crimes "had no *834 relevance in proving Neyland's prior calculation and design as charged in the aggravated-murder offenses." Neyland at ¶ 157.
{¶ 62} Other Ohio courts also have found that weapons unrelated to the crimes at issue were irrelevant under Evid.R. 401 and 404(B). In State v. Bennett , 11th Dist. Ashtabula No. 2002-A-0020, 2005-Ohio-1567, 2005 WL 737409, the trial court admitted evidence of several knives that belonged to a defendant accused of stabbing his victim, even though they had not been used in the crime and the murder weapon had not been found. Id . at ¶ 2, 11, 15, 18, and 37. The court of appeals held that the trial court erred in admitting the knives because the defendant's collection of and access to knives was irrelevant. Id . at ¶ 45-46. Likewise, in State v. Heyder , 10th Dist. Franklin No. 13AP-298, 2014-Ohio-1066, 2014 WL 1350901, the court of appeals reversed an aggravated-robbery conviction (premised on the defendant's possession of a knife during the robbery) because the trial court admitted evidence of a knife that was not used in the robbery.
{¶ 63} Here, the evidence of the five seized knives arguably may not have made the existence of any consequential fact more or less probable, and the knives arguably may not have served a relevant purpose under Evid.R. 404(B) for the state's case. As the lead opinion notes, none of the knives introduced into evidence was the actual murder weapon.
{¶ 64} However, I disagree with the lead opinion's determination that the trial court's admission of the knife evidence was obviously erroneous. Evid.R. 401 specifies that evidence is relevant if it has "any tendency to make the existence of any fact" of consequence more or less probable. A witness testified that Thomas carried a blue pocketknife with a blade that was three-to four-inches long. The medical examiner who conducted the autopsy opined that the perpetrator used a knife with a four- to six-inch blade. The blue pocketknife therefore could have been the murder weapon, and the fact that investigators were able to find Thomas's other knives but could not find the blue pocketknife has a tendency to make Thomas's disposal of the blue knife more probable.
{¶ 65} Based on these facts, it is not clear that Ohio law would have supported an effort by Thomas to exclude evidence of the five seized knives. I therefore do *30 not join in the lead opinion's determination that the trial court obviously erred in admitting the knife evidence.
2. The alleged error did not affect Thomas's substantial rights
{¶ 66} Even assuming arguendo that the knife evidence was obviously irrelevant, to qualify as correctible plain error, the defect "must have affected 'substantial rights,' " which "mean[s] that the trial court's error must have affected the outcome of the trial." Barnes , 94 Ohio St.3d at 27, 759 N.E.2d 1240. On this question, this court has long held that plain error will not be corrected "unless, but for the error, the outcome of the trial clearly would have been otherwise." (Emphasis added.) State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. More recently, this court articulated a different standard under which a defendant need only "demonstrate a reasonable probability that the error resulted in prejudice." (Emphasis sic.) State v. Rogers , 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, citing United States v. DominguezBenitez , 542 U.S. 74, 81-83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004). In doing so, however, we did not expressly overrule Long . Indeed, we have continued to apply Long 's clearly-would-have-been-otherwise standard since Rogers was decided. See *835 State v. Cepec , 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 67, cert. denied , --- U.S. ----, 137 S.Ct. 2217, 198 L.Ed.2d 662 (2017). I believe that our statement in Rogers did not fully reflect Ohio law and that we should follow our holding in Long , which has applied for nearly four decades. Thus, rather than ask, as the lead opinion does, whether there is a reasonable probability that the trial court's admission of the knife evidence affected the outcome of the trial, I would determine, pursuant to Long , whether, but for the admission of the knife evidence, the outcome of the trial clearly would have been otherwise.
{¶ 67} Thomas has not shown that the outcome of the trial clearly would have been otherwise had the evidence of the seized knives been excluded. Rather than solely portraying Thomas as a bad person, as the lead opinion suggests, the knife evidence theoretically benefited Thomas. Defense counsel smartly exploited the evidence for Thomas's benefit during cross-examination of two witnesses by confirming that McSween's DNA was not on any of the knives and that the knives were not used in the vandalism. And during closing argument, defense counsel emphasized that none of the seized knives was the murder weapon by noting that "all of Joe's knives ha[d] been tested and tested clean, no DNA." The state's inability to produce the murder weapon weighed positively in the defense's favor, and if the evidence of the seized knives had not been introduced, the defense would have lost an opportunity to emphasize this fact. Therefore, it is not clear that the trial would have resulted in a finding of not guilty if the court had excluded the knife evidence.
*31 {¶ 68} In support of its conclusion that the trial court's admission of the knife evidence affected Thomas's substantial rights, the lead opinion states that the case against Thomas did not contain overwhelming independent evidence of guilt. For example, the lead opinion faults the state for failing to establish a motive for Thomas to kill McSween; however, although Thomas denied it, evidence showed that he had fought with his girlfriend that night and seemed to believe that she had broken up with him. Evidence introduced by the state also suggested that he unsuccessfully asked other women-including McSween-to dance at the bar that night.
{¶ 69} In fact, substantial and compelling evidence supported the jury's verdict. It is undisputed that Thomas and McSween were both present at the bar within two hours before the murder. Thomas was seen that night in possession of a knife with a blade that was consistent in size with the medical examiner's description of the murder weapon. About an hour after McSween's death, a neighbor saw a man matching Thomas's general description standing by a fire in a barrel behind Thomas's residence. Investigators later found McSween's half-burned clothes in that same barrel. In light of this evidence, I would conclude that we cannot say that the evidence of the seized knives had any appreciable impact on the jury's verdict. All of this evidence establishes Thomas's guilt independent of the admitted knife evidence.
{¶ 70} It may be that the majority considers the admission of the evidence of Thomas's knives to be reversible error because his convictions are based on circumstantial evidence. But this court has held that murder convictions "can rest solely on circumstantial evidence," even in capital cases. State v. Lott , 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990). We have also explained that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof."
*836 State v. Jenks , 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. Even though the evidence supporting Thomas's guilt in this case was circumstantial, it is sufficient to support his convictions. The outcome of the trial would not clearly have resulted in a finding of not guilty if the trial court had excluded the knife evidence.
{¶ 71} Defense counsel used the same evidence that the lead opinion relies upon to reverse the jury's verdict after a trial that took approximately three weeks to instead strategically enhance their client's case, by showing that the seized knives could not be linked to McSween and that they were not used to carry out the crimes. This court should not-but the lead opinion does today-conclude that the admission of that exact same evidence, tactically used by defense counsel to affirmatively highlight the absence of any direct evidence- *32 and particularly the absence of a murder weapon that belonged to Thomas-is so clearly and highly prejudicial as to constitute plain error.
III. CONCLUSION
{¶ 72} Assuming arguendo that the trial court committed error in admitting the evidence of the five seized knives, that error did not constitute plain error, because the trial would not clearly have resulted in a finding of not guilty if the court had acted otherwise. I would reject Thomas's plain-error claim based on the admission of the knife evidence, and I would accordingly address the remaining issues raised by Thomas in his appeal.
Kennedy and DeWine, JJ., concur in the foregoing opinion.