[Cite as *State v. Lambes*, 2020-Ohio-3304.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2019 AP 08 0026 |
| LUCIAN A. LAMBES | |
| Defendant-Appellant | O P I N IO N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2018 CR 12 0461 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 11, 2020 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| RYAN STYER | JACOB T. WILL |
| Prosecuting Attorney | 54 E. Mill Street – Suite #400 |
| Tuscarawas County Prosecutor's Office | Akron, Ohio  44308 |
| 125 East High Avenue | |
| New Philadelphia, Ohio  44663 | |

*Hoffman, P.J.*

{¶1} Appellant Lucian Lambes appeals the judgment entered by the Tuscarawas County Common Pleas Court convicting him of three counts of attempted murder (R.C. 2903.02), three counts of felonious assault (R.C. 2903.11(A)(2)), and one count of aggravated robbery (R.C. 2911.01(A)(1)), all with accompanying firearm specifications, and sentencing him to an aggregate prison term of nineteen years. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On December 4, 2018, Appellant and a friend, Lisa Freetage, spent the day together using methamphetamine and driving around. Appellant and his friend Ian Cultrona, through cell phone calls and text messages, discussed the need to replenish something which was depleted. In the text dialogue, Appellant sent Cultrona photos of a semi-automatic handgun, and Cultrona replied with a photo of a loaded revolver from the vantage point of the shooter. Appellant texted in response to the photo, "Lol who we gonna get." Cultrona responded, "Someone....Let me know let's get it jump[i]ng." Appellant replied he was "trying to line shit up." Cultrona responded with a picture of two handguns, a brass-knuckled knife, and black bandanas.

{¶3} Cultrona texted Appellant the next morning. Cultrona had arranged a purchase of something for himself for $425, and Cultrona told Appellant if he wanted some, he had to hurry. Appellant expressed he had to "grab loot" because he had no money, and Cultrona responded he would put the order in.

{¶4} Cultrona went to the home of Samantha Owen on December 5, 2018, and used methamphetamine with Owen. Appellant, Freetage, and their friend Doug Casteel

also came to Owen's residence, driving Freetage's black car. The five left Owen's house in two vehicles to travel to Casteel's residence.

{¶5} While at Casteel's apartment, Owen and Freetage remained in the kitchen. The men were coming and going from a bedroom. In the presence of all members of the group, Cultrona displayed and loaded a black revolver. Through text and Facebook messages, Owen initiated contact with Brennan Wilkin, and arranged to purchase an ounce of "blueberry cheesecake" marijuana from him for $200. Casteel directed the arrangement with Wilkin through Owen. They arranged to meet Wilkin in a secluded location on a country road. After these arrangements were made, the group left Casteel's apartment in two cars. Appellant drove Freetage's black car with Casteel in the front passenger seat and Freetage laying down in the backseat. Cultrona drove his vehicle with Owen as the front passenger.

{¶6} Both vehicles proceeded to the secluded pull-off location on Liberty Road. During the trip, Freetage noted Appellant stopped her vehicle and did something to the only license plate, which was located on the rear of the car. Freetage believed Appellant removed her license plate. Casteel drove to the scheduled meeting point with Wilkin, while Appellant parked a short distance away at a gated-lane entrance on Liberty Road. The two cars remained in contact with each other through cell phone calls.

{¶7} When Wilkin arrived, he parked behind Cultrona's vehicle. He had two passengers with him. Owen approached Wilkin's vehicle, and asked to sample the marijuana. Wilkin provided the sample to Owen and she returned to Cultrona's vehicle. Freetage's black car quickly pulled behind Wilkin's vehicle. Appellant and Casteel exited

wearing bandanas as masks and brandishing handguns. Cultrona also exited his vehicle, pulling a bandana over his face and brandishing a gun.

{¶8} Appellant, Casteel and Cultrona surrounded Wilkin's vehicle, aiming their handguns at the occupants and demanding money and marijuana. Wilkin threw a yellow plastic bag containing the marijuana from the vehicle and drove quickly away. One of the men fired at Wilkin's SUV, flattening the rear passenger-side tire.

{¶9} Appellant and Casteel returned to Freetage's car and began to chase Wilkin's vehicle. A nearby resident heard gunshots as the vehicles sped by his residence. The witness also noted Wilkin's vehicle had a flat tire, and the black car did not have a license plate. The chase continued over a four-mile course, with Casteel and/or Appellant continuing to fire approximately 20 shots at Wilkin's vehicle. One bullet entered Wilkin's vehicle, grazing the leg and severing the fingertip of one of his passengers.

{¶10} Terry Stull lived in the area, and while driving home from work saw the chase approaching in his rear-view and side mirrors. He heard two or three gunshots. Both vehicles passed his truck, and Freetage's vehicle maneuvered in front of Wilkin's SUV and came to a stop. Appellant and Casteel exited, aiming guns at Wilkin's vehicle. Wilkin put the SUV in reverse. The two passengers jumped out of the SUV and jumped into Stull's truck. Stull took them to the Newcomerstown Police Department.

{¶11} Meanwhile, Appellant and Casteel proceeded to Kimbolton, where Freetage believed Appellant put the license plate back on her car. The group then traveled to New Philadelphia, where they stayed until Cultrona called to tell Casteel it was clear to return home. After dropping Casteel off at his home in Newcomerstown, Appellant and Freetage

drove to Baltimore, Maryland, where they spent the night with Freetage's mother. Appellant and Freetage returned to Ohio the next day.

{¶12} Two hours after the shooting, Owen was arrested leaving her child's school Christmas program. Cultrona was apprehended in Owen's basement. In his possession, police found a .357 revolver handgun, a knife with brass knuckles, a yellow plastic grocery bag with marijuana, $400 in cash, and three bandanas.

{¶13} Appellant was arrested five days later, on December 10, 2018, following a car chase with the Ohio State Highway Patrol.

{¶14} Appellant was indicted by the Tuscarawas County Grand Jury on eight counts: three counts of attempted murder, three counts of felonious assault, one count of aggravated robbery, and one count of conspiracy, with accompanying firearm specifications. Prior to trial, the State dismissed the charge of conspiracy. The case proceeded to jury trial on the remaining counts. The jury convicted Appellant on all counts.

{¶15} The trial court found the convictions of felonious assault were allied offenses of similar import to the attempted murder convictions. The State elected to have Appellant sentenced on the attempted murder convictions. The court sentenced Appellant to six years incarceration on each count of attempted murder, to be served concurrently to each other. Appellant was sentenced to eight years incarceration for aggravated robbery, to be served consecutively to the concurrent terms of incarceration for attempted murder. After merging the three year and five year firearm specifications, the court sentenced Appellant to a five year mandatory term of incarceration, to be served consecutively to the other sentences, for an aggregate term of incarceration of nineteen years.

**{¶16}** It is from the July 22, 2019 judgment of conviction and sentence Appellant prosecutes this appeal, assigning as error:

I. THE JURY'S FINDING OF GUILT AS TO ALL CHARGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

II. THE APPELLANT'S CONVICTIONS AS TO ALL CHARGES WERE AGAINST THE SUFFICIENCY OF THE EVIDENCE PRESENTED AT TRIAL.

III. THE COURT COMMITTED PLAIN ERROR WHEN IT INSTRUCTED THE JURY ON THE ELEMENTS OF COMPLICITY WHEN THE DEFENDANT WAS NEVER PUT ON NOTICE OF THE CHARGE THROUGH THE INDICTMENT.

I., II.

**{¶17}** Appellant argues the judgments of conviction are against the manifest weight and sufficiency of the evidence. He argues the evidence was sufficient to demonstrate he was present at the scene of the crimes, but the evidence does not demonstrate his participation in the crimes. He specifically argues there is no evidence to demonstrate he used or brandished a firearm.

**{¶18}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses,

and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶19}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶20}** Appellant was convicted of three counts of attempted murder. R.C. 2903.02 defines murder, "No person shall purposely cause the death of another." Attempt is defined by R.C. 2923.02, which provides, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Appellant was also convicted of three counts of felonious assault, defined by R.C. 2903.11(A)(2) as knowingly "causing or attempting to cause physical harm by means of a deadly weapon or dangerous ordnance." Appellant was also convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides:

> (A) No person, in attempting or committing a theft offense, as defined
> in section 2913.01 of the Revised Code, or in fleeing immediately after the
> attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

**{¶21}** The State presented evidence the evening before and the morning of the crimes, Appellant and Cultrona engaged in conversation concerning the need to acquire money Appellant did not have, and their intention to "get someone."  The conversations included photographs of weapons.

**{¶22}** Lisa Freetage testified when the group left Casteel's house, where Cultrona loaded a gun in front of them, Appellant was driving her black car.  She was laying down in the backseat, but at one point the car stopped and Appellant did something to the back of the vehicle.  She assumed he was removing the license plate.  She testified when they stopped again, both men got out of the vehicle and she heard screaming and loud bangs.  Appellant and Casteel got back in the car.  She testified they drove to Kimbolton where Appellant put the license plate back on the car. She testified she didn't feel she could go home because she knew something had happened using her car, and so she and Appellant drove to Baltimore, Maryland for the night.

**{¶23}** Both passengers of Wilkin's car testified when they stopped with Wilkin, two men came up to the car pointing guns at them.  They testified they were shot at by someone in the black car as they were chased.  One passenger was struck by a bullet in the leg and the finger during the chase.

**{¶24}** Brennan Wilkin testified after Samantha asked to sample the marijuana, another car pulled up.  He testified the occupants, who were wearing bandanas, got out

and came to Wilkin's vehicle. The men had guns and asked for money. When Wilkin pulled out, one of them shot the tire out of his car. He testified they were chased by the black car, and shots were fired from the black car, hitting one of his passengers.

{¶25} Samantha Owen testified when the black car arrived at the location where she arranged to meet Wilkins, the occupants jumped out of the car. She recognized the clothes Casteel was wearing, and assumed the other man was Appellant. Although she did not remember his clothes, she was aware Appellant was driving the black car when the group left Casteel's apartment to meet Wilkin. She testified Casteel and Appellant jumped out of the car, holding guns on Wilkin and his friends.

{¶26} This was sufficient testimony, if believed by the jury, to establish Appellant was not merely present at the scene, but held a gun to the occupants of Wilkin's car during the robbery. The testimony, if believed by the jury, further demonstrates Appellant was either the occupant or the driver of the black car during the ensuing chase, and either fired his own weapon at Wilkins's car or participated in the chase while Casteel fired at Wilkin's car. We find the judgment is supported by sufficient evidence.

{¶27} Appellant argues the testimony of Owen and Freetage is not credible. He argues they both were using methamphetamine, and further were motivated to lie.

{¶28} Freetage admitted her use of methamphetamine to the jury, and admitted she received a plea deal in order to testify against Appellant. She admitted pursuant to the plea deal she would receive probation, and she desired to avoid prison in order to get her kids back. Owen likewise admitted to drug use, admitted to a plea deal, and testified she did not want to lose her children. Owen also admitted she had previously lied to police. However, the jury is in a better position than this court to judge the credibility of

witnesses, and we find the jury did not lose its way in believing the trial testimony of Owen and Freetage. Further, much of the testimony of Freetage and Owen concerning the events of December 5, 2018, was corroborated by Wilkin and his passengers, as well two neighbors who saw the chase and heard the shots fired. In addition, a Guernsey County Sheriff's Deputy on surveillance in Kimbolton saw Freetage's black car and noted the license plate number. This testimony corroborated Freetage's testimony after the chase, they drove to Kimbolton, where she believed Appellant put the license plate back on the rear of her car.

{¶29} Appellant further argues the police did not take DNA from Freetage's car or from the bandanas seized from Cultrona to link Appellant to the crimes, nor did they conduct residue testing on Appellant to determine if he fired a weapon. Appellant was not arrested until five days after the crime, and does not challenge his presence at the scene, nor his round trip to Baltimore in Freetage's car. Therefore, scientific testing would have been of limited probative value. We find the lack of scientific evidence linking Appellant to the crime does not render the judgment against the manifest weight of the evidence. *See State v. Fields,* 5th Dist. Stark No. 2018CA00159, 2019-Ohio-2252, ¶19.

{¶30} The first and second assignments of error are overruled.

III.

{¶31} In his third assignment of error, Appellant argues the court committed plain error in instructing the jury on complicity, as complicity was not charged in the indictment.

{¶32} Appellant concedes he did not object to the instruction. Failure to object before the jury retires, absent plain error, constitutes waiver. *State v. Williford*, 49 Ohio

St.3d 247, 551 N.E.2d 1279 (1990). The Ohio Supreme Court has clarified the standard of review for plain error:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id*. We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id*. at ¶ 22, *citing United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the

utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, *quoting State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶33}** *State v. Thomas*, 2017–Ohio–8011, ¶¶ 32–34.

**{¶34}** R.C. 2923.03 defines complicity. Subsection (F) of the statute provides, "A charge of complicity may be stated in terms of this section, or in terms of the principal offense." A defendant charged with an offense may be convicted of such offense upon proof he was complicit in its commission, even though the indictment is stated in terms of the principal offense and does not mention complicity. *State v. Herring*, 94 Ohio St.3d 246, 251, 2002–Ohio–796, 762 N.E.2d 940. R.C. 2923.03(F) adequately notifies a defendant the jury may be instructed on complicity, even when the charge is drawn in terms of the principal offense. *Id.*

**{¶35}** We find no error in the trial court's jury instruction on complicity despite the fact the indictment in the instant case was stated in terms of the principal offense. The third assignment of error is overruled.

**{¶36}** The judgment of the Tuscarawas County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Wise, John, J. and

Baldwin, J. concur